## ALCOA STEAMSHIP CO., INC. *v.* UNITED STATES.

No. 271. Argued November 16, 1949.—Decided December 19, 1949.

*Melville J. France* argued the cause and filed a brief for petitioner.

*Samuel D. Slade* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Joseph W. Bishop.*

Briefs of *amici curiae* urging reversal were filed by *L. de Grove Potter* and *Clement C. Rinehart* for the Waterman Steamship Corporation, and by *Harold S. Deming* for the Stockard Steamship Corporation.

MR. JUSTICE REED delivered the opinion of the Court.

It is a principle of American maritime law that ocean carrier freight charges are not earned unless and until the goods are delivered to destination.[1] But contractual provisions establishing the shipper's liability for freight regardless of actual delivery have been uniformly held valid,[2] and have become common stipulations in carriers' bills of lading. Shipments of government property are made subject to the conditions of the carrier's usual contract of carriage unless the government standard form bill of lading specifically provides otherwise.[3] At bar is the single question of contract interpretation whether a carrier's "Goods or Vessel lost or not lost" provision survives the terms of the government standard form bill of lading. Has the government bill provided against liability for freight charges on public goods lost at sea?

On June 13, 1942, petitioner's ship, S. S. *Gunvor*, shipped a cargo of lumber at Mobile, Alabama, bound for Trinidad under a government form bill of lading. On her first day out she was torpedoed by enemy submarine. Ship and cargo were a total loss. In spite of

---

[1] See, *e. g.*, *Brittan* v. *Barnaby*, 21 How. 527, 533; *Caze & Richaud* v. *Baltimore Ins. Co.*, 7 Cranch 358, 362; Robinson, Admiralty, § 82 (1939); Borchard, *The Earning of Freight on Uncompleted Voyages*, 30 Yale L. J. 362 (1921).

[2] *E. g.*, *International Paper Co.* v. *The Gracie D. Chambers*, 248 U. S. 387; *Allanwilde Transport Corp.* v. *Vacuum Oil Co.*, 248 U. S. 377.

[3] Government Bill of Lading, Standard Form 1058, approved by the Comptroller General, August 24, 1928; 8 Comp. Gen. 698; "Condition 2" quoted p. 424 *infra*.

the carrier's failure to deliver the shipment, the bill of lading was surrendered to it, and its claim for freight on the lost cargo was paid by the War Department on September 15, 1942. On audit, however, the Comptroller General disallowed the payment on the ground that the freight had not been earned, and the sum was offset against other claims admittedly owing to petitioner. Petitioner instituted this suit under the Tucker Act in the United States District Court for the Southern District of New York to recover the freight claimed. The case in no way concerns liability for the value of the cargo lost. Reversing the conclusion of the District Court, the Court of Appeals for the Second Circuit found in the provisions of the standard government form bill of lading a "carefully devised plan" to pay freight charges only if the shipment actually arrives at destination.[4] We granted certiorari because determination of the issue raised here will guide adjustment of a large body of similar claims now pending. 338 U. S. 813.

Review of existing case law and prevailing commercial usage respecting the earning of freight provides no assistance in solving the narrow problem raised by the specific contract now before us. Further, in view of our conclusion in the case, we need not decide whether we may properly consider the Government's extensive argument regarding past administrative practice, nor rule upon its relevance or weight. As to petitioner's citation to two instances where, allegedly, claims similar to this were honored by the Comptroller General, we agree with the court below that a case of consistent administrative practice has not been made out, if indeed such practice is a relevant consideration. We therefore deal only with the bare words of the contract.

---

[4] 175 F. 2d 661, 663.

A brief statement of the general scheme of payment of carrier charges under the government bill of lading will facilitate discussion of the niceties in the draftsmanship. The standard form bill of lading is filled out by the consignor at the time of shipment, signed by the carrier's agent and transmitted to the consignee. The consignee, upon receipt of the goods shipped, endorses the consignee's certificate printed on the bill and hands the bill over to the carrier. The carrier then submits to the appropriate agency the endorsed bill and a standard form government voucher in support of its claim for the freight charges. Setting forth the details of this disbursing machinery, there are printed on the reverse of the bill of lading "General Conditions and Instructions," clearly referred to upon the face of the bill.[5]

"Condition 2" of the government bill provides the initial basis for the controversy here:

> "Unless otherwise specifically provided or otherwise stated hereon, this bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier."

Clause 6 of petitioner's bill of lading provides that:

> "Full freight to destination . . . and all advance charges against the Goods are due and payable . . . as soon as the Goods are received for purposes of transportation; . . . Goods or Vessel lost or not lost . . . ."

It is therefore conceded by all parties that under these two quoted provisions, the United States is obligated to pay freight on the lost *Gunvor* cargo unless the terms of the government bill "specifically" negative the carrier's provision. With due regard to the principle of

---

[5] Also printed on the back of the bill are a series of "Administrative Directions" and a form for "Report of Loss, Damage, or Shrinkage."

strict construction against the draftsman of a contract, we have concluded that the terms of the government bill of lading are inconsistent with petitioner's Clause 6, and that the United States is not liable for freight on this lost public property.

Occupying first place among the "Conditions" to the bill, and central to the issue here, is the payment provision.

> "1. Prepayment of charges shall in no case be demanded by carrier, nor shall collection be made from consignee. On presentation to the office indicated on the face hereof of this bill of lading, properly accomplished, attached to freight voucher prepared on the authorized Government form, payment will be made . . . ."

The simple provision against "prepayment" does not, we think, force the conclusion that freight will be paid only on delivered goods. This clause seems to us not to forbid accrual of the freight charge obligation in advance of delivery, but only to prohibit payment in advance.[6] But it does seem clear that the second sentence of "Condition 1" expressly conditions payment upon submission of two documents, the bill of lading "properly accomplished," and a freight voucher prepared on the authorized government form. If the carrier is put on express notice that fulfillment of either of these conditions posits actual delivery of the cargo, petitioner's "lost or not lost" provision must be held vitiated. In fact, both specifically contemplate actual delivery.

---

[6] The provision was required by law. For more than a century it had been the expressed legislative will that "no advance of public money shall be made in any case whatever . . . ." 3 Stat. 723. The Government interprets a further provision of this statute that ". . . payment shall not exeed [exceed] the value of the service rendered . . ." to resolve the issue at bar in its favor. Like the court below, we find it unnecessary to pass upon this contention.

426

## I.

It is petitioner's construction that the bill of lading condition has been fully satisfied. "Accomplishment" he argues to be a technical term of ancient use in the law of the sea signifying no more than surrender of the bill to the carrier by the consignee or other authorized holder. This may be conceded immediately, and indeed the government bill seems to imply this usage where the term is used alone. But in this one provision on the bill the term is not used alone. Payment is not conditioned upon submission of an "accomplished" bill of lading; the bill must be "properly accomplished."[7] Unless the modifier be held to mean nothing, it can only be inferred that more than bare "accomplishment" is contemplated. The requisites to a "properly accomplished" bill are specifically set forth. We italicize the pertinent words.

Reference to "Instruction 2" informs the carrier that:

> "The consignee *on receipt of the shipment* will sign the consignee's certificate on the original bill of lading and surrender the bill of lading to the last carrier. The bill of lading *then* becomes *the* evidence upon which settlement for the service will be made."

This consignee's certificate, printed on the face of the bill, is denominated a "Certificate of *Delivery*," and is introduced by the words:

> "I have this day *received* . . . the public property described in this bill of lading, in apparent good order and condition, except as noted on the reverse hereof."

---

[7] The only other use of the modifier significantly appears in the parallel provision on the reverse of the voucher. Voucher Instruction 1 reads: "Payment . . . will be made . . . upon this voucher form, accompanied by the corresponding bills of lading, *properly* receipted; . . . ." (Italics supplied.)

"Condition 6" recites that:

> *Receipt* of the shipment is made subject to the 'Report of Loss, Damage, or Shrinkage' noted hereon."

and "Instruction 6" calls for notation of all loss or damage before accomplishment if possible. In sum, "the" evidence upon which the carrier may rely for payment is the "accomplished," or surrendered, bill of lading, accompanied by the "Certificate of Delivery" signed "on receipt of the shipment," with the "receipt" subject to the loss or damage report.

The entries made in the situation at bar are those that could be anticipated from the terms of the bill. The consignee's Certificate of Delivery is endorsed only: "s. s. 'Gunvor' has been lost due to enemy action. . . . For the Acting District Engineer [signature illegible] Superintendent, August 8, 1942." The indicated spaces on the form were not filled in, nor was any entry made in the "Report of Loss, Damage, or Shrinkage." We do not, of course, suggest that the particular entries made on this bill determine the contractual issue, but it seems inescapable that the entry was made entirely for the record in explanation of the failure of the lumber to arrive. Without receipt of the goods, the bill was not, and could not have been, filled in under the strict terms of the standard form which we have stressed, so as to be "properly accomplished" for purposes of payment to the carrier.

## II.

By the terms of "Condition 1" of the bill of lading, payment is further conditioned upon submission of the authorized government form voucher, a separate document.[8] On the reverse of this voucher form are "Instruc-

---

[8] Standard Form 1068, approved by the Comptroller General, June 26, 1931; 10 Comp. Gen. 588. All claims against the Government for freight or express charges must be made upon this standard voucher.

tions to Carriers," referred to on the face of the voucher. In these voucher "Instructions" appears in unequivocal language, statement of the Government's position that it shall not be held liable for freight on undelivered goods. "Instruction 6" reads explicitly:

> "Payment for transportation charge will be made only for the quantity of stores delivered at destination . . . ."[9]

We think of but one argument which can be advanced against the conclusiveness of this clause. "Condition 2" on the bill of lading invokes the usual commercial contract terms "unless otherwise specifically provided or otherwise stated hereon"; it is arguable that "hereon" does not mean "thereon," and that consequently the clear provision of the voucher forbidding payment for non-delivered goods cannot be considered. But, assuming for argument that no reliance may be placed upon the further condition that the bill of lading be "properly accomplished," this reasoning leads to the anomalous conclusion that (1) under the piece of paper labeled "bill of lading" freight is "earned" though the goods are not delivered; but (2) payment will be made only on a voucher, which expressly denies the right to payment for undelivered goods. Such a construction yields an accrued obligation, without means of collection. We think it more reasonable to accept the available alternative reading, and hold that the words in "Condition 2" "otherwise stated hereon" are satisfied by the express reference on

---

[9] The balance of the sentence is not relevant here. It reads: ". . . except that in case of loss of weight from natural shrinkage en route *and* weight shipped, as shown by the bill of lading, will be paid for, provided packages are delivered intact." The syntax of this exception clause is destroyed by the conjunction in italics. Reference to the official copy at 10 Comp. Gen. 589 shows that "and" is a printer's error. The correct word is "the".

the bill to the standard voucher and the specific conditioning of payment upon submission of that voucher.

To hold petitioner to the terms of the voucher comports with practicalities. The intent of the Government to condition payment upon delivery we think abundantly clear, and the basic question is whether the Government's draftsmanship succeeds in giving unequivocal notice of this stipulation. The bill expressly summons attention to the voucher; the provision on the voucher is unmistakable. An experienced carrier could not have been unfamiliar with the express terms of a document which it uses regularly, a prescribed document upon which every claim against one of its largest customers must be made.

Since it seems to us that the bill of lading's specific conditions for payment can only be satisfied upon delivery of the shipment to destination, we hold the terms of the government bill to be inconsistent with petitioner's "Goods or Vessel lost or not lost" provision. The decision below is correct, and is

*Affirmed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE BURTON dissent on the grounds expressed below in the opinion of Judge Augustus N. Hand. 175 F. 2d 661, 663.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.