**W. A. STACKPOLE MOTOR TRANS-PORTATION, INC., Defendant, Appellant,**

v.

**MALDEN SPINNING & DYEING COM-PANY et al., Appellees.**

**W. A. STACKPOLE MOTOR TRANS-PORTATION, INC., Defendant, Appellant,**

v.

**Raymond T. SCHUBERT, Plaintiff, Appellee.**

**Nos. 5375, 5376.**

United States Court of Appeals
First Circuit.

Dec. 26, 1958.

Michael T. Prendergast, Boston, Mass., for appellant.

Herbert B. Ehrmann, Boston, Mass., with whom Edward L. LaVine and Goulston & Storrs, Boston, Mass., were on brief, for Malden Spinning & Dyeing Co., appellee.

Paul J. Kirby, Boston, Mass., with whom Kneeland & Splane, Boston, Mass., was on brief, for Raymond T. Schubert and David A. Graham, appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

Malden Spinning & Dyeing Company, a Massachusetts corporation, purchased a used textile machine known as a Manayunk Tiger, and some other minor items of textile manufacturing equipment, from a concern in Philadelphia, Pennsylvania, and arranged with David Graham, a citizen of Pennsylvania engaged in the business of a common carrier by motor vehicle, to transport the machinery from Philadelphia to Malden's plant in Lawrence, Massachusetts. On October 9, 1956, Graham's truck with the machinery on board was hit from behind in Wellesley, Massachusetts, by a truck owned by W. A. Stackpole Motor Transportation, Inc., a New Hampshire corporation. There is no doubt that the collision occurred on a public highway, nor is there any doubt that the drivers of both vehicles involved in the accident were acting at the time within the scope of their respective employments.

After the accident temporary repairs were made to the Graham truck and it

proceeded on its way. When it arrived at its destination, however, it was discovered that the Tiger and some of the other machinery it carried had been badly damaged in the collision. Nevertheless the machinery was unloaded and the Tiger placed in storage on Malden's premises. Malden paid Graham's bill for rigging and cartage and some months later the machine was partially repaired by Malden's employees and put into limited operation in Malden's plant.

A complicated nexus of claims grew out of this all too routine highway accident. Malden filed a complaint in the court below under its diversity jurisdiction (there is no doubt that the requisite jurisdictional amount is in controversy) against both Graham and Stackpole wherein it sought to recover not only for the damage done to its machinery but also for loss of use of the machinery while it was being repaired and put into operation. Its claim against Graham was grounded upon his liability as a common carrier for hire and also on the alleged causal negligence of his driver; its claim against Stackpole was grounded upon its driver's causal negligence alone. Graham answered with a general denial and an assertion of Malden's contributory negligence, and by two separate later amendments to his answer he asserted cross-claims grounded upon negligence against his co-defendant, Stackpole. In the first of these cross-claims Graham sought only to recover for the damage to his truck; in the second he sought in addition reimbursement for any damages he might be compelled to pay Malden. Stackpole answered Malden's complaint, and also both of Graham's cross-claims, with a denial of its causal negligence plus in each case some other defenses which do not concern us on these appeals.

Graham's driver also brought an action against Stackpole in the Massachusetts Superior Court to recover for personal injuries which he alleged he sustained in the accident. This action was removed to the court below, the driver being a citizen of Pennsylvania, and it was tried by jury in that court with the principal action of Malden against Graham and Stackpole and the cross-claims of Graham against Stackpole.

In response to six special questions propounded by the court the jury found that the accident was caused by the negligence of the driver of the Stackpole truck and was not due to any lack of care on the part of Graham's driver, that the damages suffered by the latter amounted to $250, that the damages to the Graham vehicle amounted to $1,985, that under the rule of "ordinary damages" the difference between the value of the machinery when shipped from Philadelphia and the value of the machinery when it arrived in Lawrence *plus prepaid freight*, was $3,469.75, and that as "special damages" Malden was entitled to recover $17,000 for loss of use of the machinery. The court entered a single judgment on this special verdict wherein it dismissed with prejudice the claim of Malden against Graham grounded on negligence, directed that Malden recover from Graham the amount the jury had found to be its ordinary damages ($3,469.75), directed that Malden recover the above amount from Stackpole and also the amount the jury had found to be its special damages ($17,000), directed that Graham on his cross-claim recover from Stackpole in the amount of the damages to its truck as found by the jury ($1,985), and directed that Graham's driver in his action against Stackpole recover the amount of his damages as found by the jury ($250). It directed recovery of interest on these sums from the date of the accident and it directed that Graham recover from Stackpole any sums which he should pay to Malden. Graham did not appeal from so much of the judgment as ran against him, but Stackpole filed notices of appeal in both of the cases brought against it, i. e., the case brought by Malden in which Graham had filed his cross-claims and the case brought by Graham's driver.

Only two of the appellant's ten points on appeal merit discussion and one of those can be disposed of quite briefly.

**50**

Stackpole contends that the District Court erred in allowing the jury to consider Graham's cross-claims against it for the reason that, since it was a New Hampshire corporation and Graham was a citizen of Pennsylvania, trial in the District of Massachusetts does not comply with the venue requirements of Title 28 U.S.C. § 1391. We do not reach the merits, if any, of this contention.

▬ There can be no doubt that the present venue statute cited above, like its predecessor, does not detract from the district court's general diversity jurisdiction, "but merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election." Moreover, "the privilege must be 'seasonably' asserted; else it is waived," and to be seasonable, "it must be asserted at the latest before the expiration of the period allotted for entering a general appearance and challenging the merits." Commercial Casualty Ins. Co. v. Stone Co., 1929, 278 U.S. 177, 179, 180, 49 S.Ct. 98, 99, 73 L.Ed. 252. These principles are now embodied in Rule 12, F.R.Civ.P. which in paragraph (b) provides that the defense to a cross-claim on the ground of improper venue "shall be asserted in the responsive pleading thereto," unless at the option of the pleader the defense is raised earlier by motion, and, with exceptions not here material, in paragraph (h) provides: "A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply * * *." See also Title 28 U.S.C. § 1406(b) which reads: "Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."

▬ Application of these rules disposes of the appellant's contention of lack of venue, for it answered Graham's first cross-claim for damage to his truck on the merits, and even requested trial by jury, without suggesting any impropriety with respect to venue. Nor, so far as we can tell from the record, did it suggest improper venue in its answer to Graham's amended cross-claim wherein he demanded in addition reimbursement from Stackpole for whatever sums he might be required to pay Malden. Indeed, from the appellant's argument and brief it would appear that Stackpole's counsel did not decide to raise any question of venue until Malden was permitted, months after Graham filed his second cross-claim, to amend its complaint by increasing the *ad damnum*, thereby increasing Stackpole's potential liability, and that Stackpole's counsel did not bring his assertion of lack of venue to the attention of the court until he objected at the trial to the introduction of any testimony at all bearing on Graham's cross-claims. It seems to us too clear for words that to entertain an objection to venue coming for the first time at that late date in a proceeding would be "subversive of orderly procedure and make for harmful delay and confusion," to quote again from the Commercial Casualty Ins. Co. case cited above.

The really serious and difficult question on this appeal is whether the District Court erred in charging the jury on Malden's claim as shipper against Graham as carrier that: "If the goods were damaged in transit, the carrier, Graham, whether he was at fault or not, is liable for the amount of the damage, measured by the difference between the value of the goods at the time of shipment plus the prepaid freight—and you will see I have underlined the words 'plus the prepaid freight' in the charge; [1] in other words, the value at the time of the shipment includes the amount of the freight, and you have to add the freight."

Thus the jury was told that in assessing damages against Graham as a common carrier it was to include the costs of transportation in its award. And it appears that the jury followed this in-

1. The court gave a typewritten copy of its charge to the jury.

struction for the last five digits of the amount found by the jury to be Malden's ordinary damages coincide exactly with the amount of the freight Malden paid to Graham.

Had Graham appealed from so much of the judgment as runs against him he certainly could have raised the question of his liability for transportation costs under Part I of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 20(11) which provides that common carriers of goods for hire shall issue a bill of lading for property transported by them and "shall be liable to the lawful holder thereof for any loss, damage, or injury to such property." However Graham has not appealed; he apparently saw no reason to do so in view of the provision in the judgment giving him recovery over against Stackpole for any sum he should pay Malden. In this situation Graham would stand charged with liability as a common carrier for the freight paid to him by Malden should he for any reason be unable to collect from Stackpole. This is the chance he took by not appealing from the judgment insofar as it runs against him.

■ But, since the effect of the judgment is to make Stackpole ultimately liable to pay any damages assessed against Graham, Stackpole is in position as appellant to raise the question whether the jury were properly instructed with respect to the principles it should apply to determine the amount of Graham's liability as a common carrier of goods for hire. Thus Stackpole's appeal raises the question whether a common carrier as part of his statutory liability as such "for the full actual loss, damage, or injury" to property being transported by him is liable for the freight paid on goods damaged in transit.

■ Apart from a valid stipulation in a bill of lading to the contrary, "the ordinary measure of damages in cases of this sort is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive." Gulf, Colorado & S. F. Ry. Co. v. Texas Packing Co., 1917, 244 U.S. 31, 37, 37 S.Ct. 487, 489, 61 L.Ed. 970. No clear, fully reasoned authority has been cited to us, nor have we found any, to support the general proposition that the lawful holder of a bill of lading is entitled to prepaid freight in addition to his ordinary damages as measured above. See, however, Pennsylvania R. R. Co. v. Olivit Bros., 1917, 243 U.S. 574, 585, 586, 37 S.Ct. 468, 61 L.Ed. 908. Indeed, to allow recovery of prepaid costs of cartage in addition to damages measured by the "ordinary" yardstick as stated above would more likely than not, in the case of goods only very slightly damaged in transit, give the shipper more than recovery for his full actual loss, damage or injury at the expense of the carrier. In maritime law, however, in the absence of a provision in an ocean carrier's bill of lading for the payment of freight "Goods or Vessel lost or not lost," it is established "that ocean carrier freight charges are not earned unless and until the goods are delivered to destination." Alcoa Steamship Co. v. United States, 1949, 338 U.S. 421, 422, 70 S.Ct. 190, 191, 94 L.Ed. 225. Furthermore, it has been held that ocean freight is not earned when goods, even though not lost or wholly destroyed, are so badly damaged in transit by the carrier's negligence that "they cannot be delivered in specie." The Willdomino, 3 Cir., 1924, 300 F. 5, 21, certiorari granted 266 U.S. 597, 45 S.Ct. 98, 69 L.Ed. 460, certiorari dismissed 270 U.S. 641, 46 S.Ct. 205, 70 L.Ed. 776, affirmed on other grounds S.S. Willdomino v. Citro Chemical Co., 1927, 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491.

We are not aware of any cases applying this rule of maritime law in cases involving the carriage of goods on land. But we see no reason why that rule should not apply on land as well as at sea, for, as pointed out by Judge Learned Hand writing for a majority of the Court of Appeals in Alcoa Steamship Co. v. United States, 2 Cir., 1949, 175 F.2d 661,

663, affirmed on certiorari 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225, supra, "The law throws upon all carriers the risk of performance, for performance is a condition upon the shipper's promise to pay, just as performance is always a condition upon payment in any contract of service."

 Application of the maritime rule, however, does not provide the answer to the question presented by the case at bar. The reason for this is that the machinery was not wholly lost or destroyed in transit. It is true that there is evidence that on arrival the Tiger was found to be so badly damaged that it had only salvage value as junk,[2] and that this evidence might invoke the rule of The Willdomino, supra, for we may assume that the machine could not be delivered "in specie" and we may also assume that the rule in that case would apply as well in the case of carrier's liability based upon the Cummins Amendment as in the case of a carrier's liability based upon negligence. But in the Willdomino case the shipper abandoned the goods involved to the ship whereas the shipper in the case at bar, Malden, accepted delivery of the Tiger, paid for its cartage, and put it in storage on its premises. Thus, whatever may be the merit of the rule in The Willdomino, it does not apply here, for in our opinion acceptance of delivery of damaged goods and payment of transportation costs thereon constitutes acceptance of the service proffered by the carrier and amounts to a waiver by the shipper of any right he might have to recover freight. It does not, of course, constitute a waiver of a shipper's right to recover ordinary damages measured by the rule succinctly stated in the Gulf, Colorado etc. Ry. case cited and quoted from earlier in this opinion. We therefore reach

the conclusion that the appellant's objection to the charge was well taken.

The appellant's other objections, including points relating to the larger judgment against it for "special damages," have been considered only to be rejected as so wholly without merit as not to warrant discussion.

A consolidated judgment will be entered affirming the judgment of the District Court with the exception of paragraphs numbered 1 and 3, vacating said paragraphs numbered 1 and 3, and remanding the cause to that Court for amendment of the judgment consistent with this opinion; the appellees to recover costs on appeals.

---

2. Actually, the Tiger was not junked but eventually partially repaired and put into limited operation. The reason for this, however, was that only a very few Manayunk Tigers had ever been built, that efforts to find a used machine to take the place of the one damaged proved fruitless and that it would cost some $15,000 and take several months to have a new one built to order, whereas partial repairs to the damaged machine took less time and were accomplished at substantially less expense than purchase of a new one.