UNITED STATES of America,
Appellee,

v.

GULF PUERTO RICO LINES, INC.,
Defendant, Appellant.

No. 73–1368.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1974.

Decided March 19, 1974.

Jose Antonio Fuste, San Juan, P. R., with whom Jimenez & Fuste, San Juan, P. R., was on brief, for defendant, appellant.

Morton Hollander, Atty. Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Julio Morales-Sanchez, U. S. Atty., and Robert S. Greenspan, Atty. Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

In October 1969 the United States Government contracted with defendant, Gulf Puerto Rico Lines, Inc. (Gulf) for the shipment of several thousand bags of flour from New Orleans, Louisiana, to Puerto Rico. The flour was transported aboard Gulf's vessel SS MAIDEN CREEK, and arrived at its destination in December 1969 in partially damaged condition. The contract of carriage between the parties was set forth in a bill of lading issued by Gulf, which provided, in relevant part, that the agreement "shall have effect subject to the provisions of the Carriage of Goods by Sea Act [COGSA, 46 U.S.C. § 1300, et seq. (1970) ]." Pursuant to COGSA, no action for damages incurred during shipment may be maintained "unless suit is brought within one year after delivery of the goods . . ." 46 U.S.C. § 1303(6). Prior to shipment of the flour, however, the Gulf bill of lading was overstamped by government officials to provide that

"This shipment is made under all terms and conditions of the Standard Form Government Bill of Lading and subject to the terms and procedures set forth in the Comptroller General of the United States Circular Letter B-150556, dated June 16, 1967."

Among the provisions of the Standard Form is an explicit waiver by the carrier of all periods of limitation which would be otherwise applicable to commercial shipments. .

In July 1971, some eighteen months after delivery of the damaged goods, the United States brought suit against Gulf, which promptly moved for summary judgment on the ground that, under § 1303(6), the action was time-barred. In response to this motion, the government contended that (1) Gulf had effectively waived § 1303(6) by accepting the overstamped bill of lading, and (2) that even without such a waiver, § 1303(6) could not bar actions brought by the United

States, since in order for statutes of limitation to apply to the federal government, there must be a clear manifestation of Congressional intent, not present in the legislative history of COGSA. The district court, finding a waiver of § 1303(6), denied Gulf's motion. This matter is here on interlocutory appeal, 28 U.S.C. § 1292(b).

■ We agree with the district court that Gulf's willingness to comply with the contract, despite the government's overstamp, operated to deprive it of any statutory defense of time limitation which might have been available under § 1303(6). We note that pursuant to 46 U.S.C. § 1305, a carrier "shall be at liberty to surrender in whole or in part all or any of his rights and immunities" under COGSA. Relying either explicitly or implicitly on this section, courts have consistently recognized the legality of a waiver of the § 1303(6) limitations period. *See* e. g., United Fruit Co. v. J. A. Folger & Co., 270 F.2d 666 (5th Cir. 1959), cert. denied, 362 U. S. 911, 80 S.Ct. 682, 4 L.Ed.2d 619 (1960); Monarch Industries Corp. v. American Motorists Ins. Co., 276 F. Supp. 972 (S.D.N.Y.1967); The Argentino, 28 F.Supp. 440 (S.D.N.Y.1939); *cf.* United States v. Gydnia American Shipping Lines, 57 F.Supp. 369 (S.D.N.Y.1944). Although the above cited cases all involved post-contractual waivers, we reject defendant's contention that an effective waiver may not be similarly executed at the commencement of the parties' relationship. It is only where such a waiver is the "result of an undesirable exertion of superior bargaining power" that a waiver in the original contract will be held invalid. United Fruit Co. v. J. A. Folger & Co., *supra*, 270 F.2d at 668 n. 1 (dictum). The record in the instant case with respect to Gulf's acceptance of the overstamp is totally devoid of any evidence of an improper use of "superior bargaining power" by the government.[1]

■ We also reject, for the reasons adequately stated by the district court, defendant's further assertion that to find a waiver under the circumstances of this case, would result in an impermissible discrimination in favor of the government in violation of 46 U.S.C. § 1309. *See also* The Argentino, *supra*, 28 F.Supp. at 442–443.

■ Additionally, we must recognize that under traditional rules the United States has not been subject to statutes of limitations under any circumstances. Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). When Congress in 1966 prescribed such a limitations period for actions involving the United States, 28 U.S.C. § 2415, it chose a period of six years (rather than the one year provided by COGSA) subject only to express contrary provision in other statutes. COGSA, which was enacted thirty years prior to § 2415, and which makes no mention of any limitations period for the United States, is an unlikely candidate for such a contraction of the rights of the United States. *Cf.* United States v. Herron, 87 U.S. (20 Wall.) 251, 22 L.Ed. 275 (1873); United States Nav. Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

■ Even though the provisions of COGSA do not place a one-year limitations period on the United States, it is not without significance that the bill of lading was overstamped with a notice to refer to separate provisions applicable to the government. Certain officers of the government, invested by Congress with the power to make contracts for the government on the most advantageous terms and conditions available, might logically make concessions con-

---

1. We recognize that the *potential* for such an improper exercise of bargaining power is particularly great where one of the parties is the federal government. However, we deem it unwise to conclude *per se* that every contractual waiver in favor of the government was obtained as the result of such undesirable governmental action. If such a waiver is sought to be deemed invalid, the shipper must produce actual evidence of inappropriate government bargaining conduct.

cerning the period of limitations in order to obtain desirable terms on other elements of the transaction. The overstamp clearly indicates that no such concession was made by the contracting officers in this case, and thus precludes the carrier from arguing that the *government* has waived *its* rights. *Cf*. United States v. The South Star, 210 F. 2d 44 (2d Cir. 1954).

If the result of the totality of the transaction is that the government, by alert dealing, has obtained for itself a position superior to that of private shippers, the result is consistent with the preferential treatment the United States often allows itself in commercial dealings. *See, e. g.*, Alcoa S. S. Co. v. United States, 338 U.S. 421, 422, 70 S. Ct. 190, 94 L.Ed. 225 (1949); Emergency Fleet Corp. v. Western Union Tel. Co., 275 U.S. 415, 48 S.Ct. 198, 72 L.Ed. 345 (1928); 49 U.S.C. § 22 (preferences under the Interstate Commerce Act). Accordingly, the United States should receive the benefit of the six year limitations period provided in its statute and carefully preserved by its employees.

Affirmed.