The ASSOCIATED GENERAL CONTRACTORS OF AMERICA, et al., Plaintiffs–Appellees,

v.

CITY OF COLUMBUS; Gregory Lashutka, Mayor; Thomas B. Merritt, Service Director, Defendants–Appellants.

No. 96–4116.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1997.

Decided March 26, 1999.

Ronald J. O'Brien, Daniel W. Drake (briefed), Columbus City Attorney's Office,

Columbus, OH, Keith M. Wiener (argued and briefed), J. Scott Carr (briefed), Holland & Knight, Atlanta, GA, for Defendants–Appellants.

Kevin R. McDermott (argued and briefed), Roger L. Sabo, David R. Eberhart, Schottenstein, Zox & Dunn, Columbus, Ohio, for Plaintiffs–Appellees.

Before: MERRITT and BATCHELDER, Circuit Judges; DOWD, District Judge.*

## OPINION

BATCHELDER, Circuit Judge.

## I. BACKGROUND

Plaintiff–Appellees originally filed this action in August 1989, challenging the constitutionality of the City of Columbus's minority set-aside ordinance, the Equal Business Opportunity ("EBO") Code of 1989. Shortly after suit was filed, the City Council amended the ordinance to remove the numerical quotas but left it otherwise essentially unchanged. After some skirmishing before the district court, the parties submitted an agreed order acknowledging that the EBO Code of 1989, both in its original form and as amended, was unconstitutional pursuant to *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). The order enjoined the City from "discriminating on the basis of percentage preference for minorities or females in construction work and ... from legislatively or administratively enacting" any further preferences without first complying with the requirements of *Croson.* The agreed order concluded:

> The court will maintain continuing jurisdiction in this case, and if or when the City of Columbus believes that it has a basis to impose minority or female percentage preferences in the award of

prime contracts or subcontracts for construction then the City of Columbus will petition the Court to modify this Order.

This order was signed by the district court on January 25, 1991, and entered on January 29, 1991 ("the January 25, 1991, order" or "the agreed order"). On August 12, 1992, the district court entered a judgment enjoining the City from, among other things, "enacting any percentage preference ordinance without first complying with the terms of the January 25, 1991, order of this Court." The judgment went on to state that the district court was retaining jurisdiction over the action to ensure that the City complied with the earlier consent order in the event that the City wished to enact any future preference ordinance. The Columbus City Council ("Council") then undertook to collect data with regard to minority-owned businesses in the City and the history of discrimination with regard to such business, and, in December 1993, passed a new EBO Code. The new code specifically provided that it would become effective only upon "application to and approval by [the district court judge] pursuant to his January 25, 1991, Order...." In February 1994, the City filed a "Motion of the Defendants for Relief from Judgment and Order and/or To Modify and Dissolve Injunction." After discovery was completed, the district court held an extensive evidentiary hearing, and in August 1996, issued its findings of fact and conclusions of law. The order struck the EBO Code of 1993, concluding "[t]he city's EBO Code of 1993 does not serve a compelling state interest, nor is it narrowly tailored to the achievement of its goal."

The City filed this timely appeal, challenging the district court's opinion and judgment denying the City's motion to dissolve or modify the injunction and striking down the 1993 EBO Code. Prior to oral argument, this Court sent a letter to the parties asking that they be prepared to

* The Honorable David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation.

discuss several specific issues concerning the jurisdiction of the district court:

> The question which has arisen is: Having struck down the City's set-aside program and enjoined its enforcement by Order dated January 25, 1991, and entered January 29, 1991, under what authority or pursuant to what case or controversy did the district court retain continuing jurisdiction? Specifically, please address the following issues:
>
> 1. What authority does a federal court have to prevent a city council from enacting legislation and putting it into effect? Does legislative immunity prevent such an injunction? Is such an injunction a prior restraint of political speech?
>
> 2. Is the present appeal a justiciable case or controversy?
>
> 3. Is the District Court's decision below an advisory opinion?
>
> 4. Is the present appeal ripe for judicial review?
>
> 5. How can a party have standing to sue under *Associated General Contractors v. Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), when a federal court order prevents the government from erecting the proposed "barrier"?

The parties were given additional oral argument time and they addressed these issues extensively.

■ [E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1071–72, 137 L.Ed.2d 170 (1997) (internal quotation marks and citations omitted). Further, it is established law that parties "may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy'...." *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (*citing Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974)).

Because, for the reasons that follow, we conclude that the district court lacked jurisdiction over this matter after the entry of the January 25, 1991, order declaring unconstitutional the EBO Code of 1989, we vacate the judgment entered on August 26, 1996, as well as that portion of the January 25, 1991, agreed order purporting to give the district court continuing jurisdiction over the activities of the Council relating to EBO ordinances.

## II. EQUITY JURISDICTION

■ Federal court jurisdiction is limited by the United States Constitution to "cases" and "controversies".[1] There is no question that the district court had jurisdiction to entertain the complaint originally filed by the plaintiffs challenging the constitutionality of the 1989 EBO Code. The issue that we must address here is whether the district court had continuing jurisdiction to review any new set-aside

---

1. Article III, Section 2, Clause 1 of the United States Constitution reads:

 The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, citizens or Subjects.

 U.S. Const. art. III, § 2, cl. 1.

ordinance the City might attempt to adopt, and specifically, to review the 1993 EBO Code adopted by City Council subject to the district court's approval. In other words, once the district court had, albeit through an order agreed to by the parties, decreed that the 1983 Code was unconstitutional and enjoined its enforcement, was there any case or controversy remaining over which the court had jurisdiction?

> Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in the tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

The plaintiffs argue that the district court had jurisdiction over this action when it was originally filed, and the court's order from which this appeal is taken was entered in the exercise of the district court's continuing jurisdiction in equity to remedy the injury to the plaintiffs. The injury which the plaintiffs raise in their complaint is the inability to participate in the bidding for public contracts on an equal footing with those benefited by the set-aside ordinance. As we shall more fully discuss in a subsequent section of this opinion, after the entry of the agreed order holding that ordinance unconstitutional and enjoining its enforcement, the plaintiffs had no continuing injury. We recognize, however, that plaintiffs' real grievance is not simply with the particular set-aside ordinance; their real contention is

that the City cannot, consistent with the requirements of *Croson,* adopt *any* set-aside program. That being the case, the plaintiffs argue, the district court's eventual review of the 1993 EBO Code was inevitable; since the district court has in fact performed that review, it should not have been in vain. We are not blind to the efficiency of this approach to determining jurisdiction. It is, however, wrong.

■ Both aspects of the "dual limitation" described in *Flast* militate against the finding of continuing jurisdiction in the district court in this case, but it is the second—the assurance that the federal courts will be confined to the role of the judicial branch and will not intrude upon the roles of the legislative and executive branches—that predominates here. The Supreme Court consistently has held that "a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character." *New Orleans Water Works Co. v. City of New Orleans,* 164 U.S. 471, 481, 17 S.Ct. 161, 41 L.Ed. 518 (1896).

> But the courts will pass the line that separates judicial from legislative authority if by any order, or in any mode, they assume to control the discretion with which municipal assemblies are invested when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances by such bodies are legislative acts, which a court of equity will not enjoin.

*Id.* The *New Orleans* Court made clear that the role of the court is to intervene, if at all, only after a legislative enactment has been passed. "We repeat that when the city council shall pass an ordinance that infringes the rights of the plaintiff, and is unconstitutional . . . it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance." *Id.* at 482, 17 S.Ct. 161; *see McChord v. Cincinnati, New Orleans, &*

*Texas Pacific R.R.,* 183 U.S. 483, 497, 22 S.Ct. 165, 46 L.Ed. 289 (1902) (" 'It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.' ") (quoting *Alpers v. San Francisco,* 32 F. 503, 507 (N.D.Cal.1887)); *Frison v. United States,* No. 95–5062, 1995 WL 686224, at *1 (D.C.Cir. Oct. 4, 1995) (unpublished) ("The district court appropriately declined to interfere prospectively with the exercise of legislative power by the United States Congress."); *Crafton v. Alexander,* No. 86–5516, 1986 WL 18432, at *1, 810 F.2d 200 (6th Cir. Nov. 7, 1986) (unpublished) ("Federal courts have no jurisdiction to review the constitutionality of proposed state legislation."); *Vincennes Water Supply Co. v. Public Serv. Comm'n.,* 34 F.2d 5, 9 (7th Cir.1929) ("[E]quity cannot interfere with, or in advance restrain, the discretion of a municipal body's exercise of legislative powers."); *Real Estate Dev. Co. v. City of Florence,* 327 F.Supp. 513, 515 (E.D.Ky. 1971) (holding that a court does not have the jurisdiction to "supervise or superintend" proceedings of a city council); *see also, United States v. Los Angeles & S.L. R.R.,* 273 U.S. 299, 314–15, 47 S.Ct. 413, 71 L.Ed. 651 (1927) (holding that a preliminary report of the Interstate Commerce Commission regarding investigation done by that body is not subject to equitable powers of the court). More recently, in *Younger v. Harris,* 401 U.S. 37, 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court stated, "it can seldom be appropriate for these courts to exercise any such power of prior approval or veto over the legislative process." [2]

"Seldom," of course, does not mean "never," and the absolute language of *New Orleans* and *McChord* has, on occasion, been tempered. Most notably, the federal courts' continuing equitable jurisdiction in voting rights cases has included the power to approve or veto legislation before it becomes law. In these cases, however, continuing jurisdiction to fashion remedies is wholly dependent on there having been a violation of the Constitution or of federal law with respect to the fundamental right to vote, and the equitable powers of the federal court extend only to the rectifying of the condition that offends the Constitution or federal law. In *White v. Weiser,* 412 U.S. 783, 794–95, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973), the Court said, "From the beginning, we have recognized that 'reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.' " (quoting *Reynolds v. Sims,* 377 U.S. 533, 586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)). And in *Voinovich v. Quilter,* 507 U.S. 146, 156, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993), the Court held, "Federal courts are barred from intervening in state apportionment in the absence of a violation of federal law precisely because it is the domain of the States, and not the federal courts, to conduct apportionment in the first place." The same principle is reflected in the Voting Rights Act, 42 U.S.C. § 1973 *et seq.* ("VRA"), which provides the statutory authorization for the United States District Court for the District of Columbia or the United States Attorney

---

**2.** The plaintiffs cite *Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990) in support of the district court's jurisdiction to preapprove the proposed new EBO Code. *Spallone,* however, is wholly inapposite. Although *Spallone* arose out of the efforts of the federal district court to remedy the discriminatory public housing practices of the City of Yonkers, *see United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181 (2d Cir.1987),

*Spallone* itself dealt with the power of the district court to hold in contempt the individual members of the Yonkers City Council who, although the Council had entered into an agreed order requiring the adoption of housing legislation, refused to vote to adopt that legislation. The underlying remedial orders of the district court and the remedial jurisdiction of the court were not at issue in that case.

General to review and approve proposed changes in state voting requirements and procedures necessary for the state to conduct elections. This "preclearance" authority is triggered only by the finding, in a proceeding under the Act, that the state has engaged in invidious discrimination with regard to the fundamental right of its citizens to vote. *See* 42 U.S.C. §§ 1973a, 1973c.

The intent of the agreed order in the case before us was to "in advance restrain[ ] the discretion of a municipal body while it is in the exercise of powers that are legislative in their character." *New Orleans,* 164 U.S. at 481, 17 S.Ct. 161. Even under the most expansive reading of the limited circumstances in which the federal courts have been held to have jurisdiction to interfere in the legislative process, however, the district court did not have such power here. Once the district court declared the 1989 EBO Code unconstitutional and enjoined its further enforcement, the court had remedied the constitutional violation, and there was no lingering or continuing condition that itself offended the Constitution. There was, therefore, no condition to rectify.

The plaintiffs argue that the equitable power of the federal court is amply broad to encompass a remedial order such as the order at issue here. It is too late in the day to argue that Article III equity jurisdiction is not broad enough to authorize a federal court, once it has found a constitutional violation by a state or local governmental entity, to administer intricate and expansive remedial orders. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). This use of equitable power, however, has been confined to those circumstances in which the court has found that the state or local governmental entity has violated the Con-

stitution, and that the mere cessation of the particular activity or method of operation will not serve to remedy the violation. So, for example, where the actions of the local school board have resulted in segregated schools, the federal court has been held to have broad equitable jurisdiction to enter orders requiring specific and on-going actions on the part of the school board in order to desegregate those schools and correct the residual effects of that segregation. *See, e.g., id.; United States v. Montgomery County Bd. of Educ.,* 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (1969) (federal courts must in some circumstances address matters other than pupil assignment in order to eliminate the effects of prior segregation); *see also Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (equity powers of federal court were broad and flexible enough to encompass remedial order that included educational components) [hereinafter *Milliken II* ].

Similarly, the equitable power of the federal courts has been held to extend to the management of other types of institutions where the state's administration of the institution in some particular is held to be in violation of the constitutional rights of those who occupy or utilize them. *See, e.g., Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (district court seeking to bring to immediate halt ongoing constitutional violation in administration of prison was justified in entering comprehensive order addressing each element of violation); *United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181 (2nd Cir. 1987) (where district court found that city had contributed to racial segregation in housing patterns through its decisions with regard to the location of federally-funded low income housing, court did not exceed its equitable powers in ordering city to construct low income housing in other areas of city).

In each of the cases cited above, the district court's remedial order was intended not merely to put a stop to the particu-

lar act or acts of the governmental entity that violated the Constitution, but to eradicate the condition resulting from the constitutional violation. As the *Swann* Court explained, "a school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task is to correct, by a balancing of the individual and collective interests, the *condition that offends the Constitution*." *Swann,* 402 U.S. at 15–16, 91 S.Ct. 1267 (emphasis added). It is in this respect that the case before us today differs critically from those cited above. Here, the preference ordinance was unconstitutional; its enforcement violated the Constitution; but there was no resulting or continuing condition that "offends the Constitution." *Id.*

In *Milliken II,* the Supreme Court held that "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation." *Milliken II,* 433 U.S. at 282, 97 S.Ct. 2749. The case before us today presents a clear example of a district court decree aimed at eliminating a condition that neither violates the Constitution nor flows from such a violation. Here, the parties and the district court agreed that the set-aside program violated the Equal Protection Clause. The remedy was to remove from the City's body of ordinances the ordinance creating the set-aside program. The agreed order did exactly that. Once the set-aside program was gone, the constitutional violation was gone, and no condition requiring repair remained. The remedy was complete. The agreed order, however, went beyond that remedy. The order enjoined the City from enacting any new set-aside legislation without first obtaining district court approval—thus, the decree aimed at eliminating a condition that did not yet exist, a condition that, at most, might violate the Constitution, if that condition should in fact materialize.

During oral argument, appellees cited to *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), and one of the cases *Agostini* overruled, *Aguilar v. Felton,* 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), as supporting continuing jurisdiction in the district court. Plaintiff's reliance upon these cases is misplaced.

In *Aguilar,* the plaintiffs brought suit seeking declaratory and injunctive relief against the New York City Board of Education, asserting that the board's implementation of Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq.,* by providing Title I services to private school students on private school premises during school hours, violated the Establishment Clause of the United States Constitution. The Supreme Court affirmed the Second Circuit's holding that the program necessitated an excessive entanglement of church and state in the administration of Title I benefits. *Aguilar,* 473 U.S. at 414, 105 S.Ct. 3232. On remand, the district court permanently enjoined the board:

> from using public funds for any plan or program under [Title I] to the extent that it requires, authorizes or permits public school teachers and guidance counselors to provide teaching and counseling services on the premises of sectarian schools within New York City.

*Agostini,* 521 U.S. at 212, 117 S.Ct. at 2005. The board then "reverted to its prior practice" in administering Title I services, which had not been challenged. Years later, relying upon subsequent Establishment Clause cases of the Supreme Court, the board filed a Federal Rule of Civil Procedure 60(b)(5) motion, seeking relief from the permanent injunction. The Court, in *Agostini,* granted the relief requested and remanded to the district court with instructions to vacate the injunction. *Id.* at 240, 117 S.Ct. at 2019.

*Aguilar* and *Agostini* must be distinguished from the present case in a number of ways. For our purposes, the important

distinctions are that those cases did not involve the jurisdiction of the court to enter a remedial order or to review and pre-approve the actions of a legislative body, and the reach of the injunction entered in *Aguilar* and ordered vacated by the Court in *Agostini* was entirely within the equity jurisdiction of the district court. In *Aguilar* the district court simply declared the practice of the school board unconstitutional and enjoined the school board from continuing that unconstitutional practice. The *Agostini* Court granted relief from that continuing injunction because of what it termed a *"bona fide,* significant change in subsequent law." *Id.* at 238, 117 S.Ct. at 2018. In the case at hand, the district court declared the EBO Code of 1989 unconstitutional and enjoined the Council from continuing to enforce it. The court then went much further, "maintain[ing] *continuing jurisdiction"* and requiring that "if or when the City of Columbus believes that it has a basis to impose minority or female percentage preferences in the award of prime contracts or subcontracts for construction then the City of Columbus will petition the Court to modify this Order." It is this third element of the injunction, not found in the district court's injunction in *Aguilar,* which exceeded the court's jurisdiction. *Agostini* is simply inapposite.

Once the 1983 EBO Code was declared unconstitutional and its enforcement enjoined, the City no longer had any set-aside or preference program. The absence of a set-aside program did not violate the Constitution, and, because there remained no condition that offended the Constitution, the order requiring the court's pre-approval of any attempt to adopt a new preference program cannot be characterized as a remedial order.

### III. JUSTICIABILITY

Finally, we conclude for a variety of reasons that no justiciable case or controversy remained after the district court declared the 1983 EBO Code unconstitutional. Noting that justiciability itself is not a concept imbued with precise meaning, the Court in *Flast v. Cohen* stated:

> [N]o justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action. Yet it remains true that "justiciability is . . . not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures . . . ."

392 U.S. at 95, 88 S.Ct. 1942 (quoting *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)) (footnotes omitted).

### A. Standing

The terms "case" and "controversy" are not defined precisely in the Constitution or in the body of case law developing the concept of Article III jurisdiction. Rather, those terms have been defined in terms of other concepts that have been identified as components of the requirement that only cases and controversies properly may be decided by Article III courts. One of these concepts is standing.

> The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III, which itself defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded. It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct . . . and (3) a likeli-

hood that the injury will be redressed by a favorable decision.

*Associated Gen. Contractors v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (internal quotation marks and citations omitted). The Court held in *Jacksonville* that the set-aside ordinance challenged by the plaintiffs was a governmentally erected barrier that made it more difficult for members of some groups than for members of other groups to obtain a benefit; that the "injury in fact" suffered by the plaintiffs was the inability to compete in the bidding process on a level playing field; and that in order to have standing to challenge the set-aside ordinance, the plaintiffs need only show that, although they were ready and able to participate in the bidding process, they were prevented from doing so by the governmental entity's discriminatory policy. *Id.* at 666, 113 S.Ct. 2297.

The critical difference between *Jacksonville* and the case before us today is that here, the governmentally erected barrier that prevented the plaintiffs from obtaining the benefit at issue, namely, the ability to participate in the bidding process on an equal footing with all other potential bidders, was removed by the agreed order entered by the district court on January 29, 1991. Contrary to appellees' argument, the actions of the Council in 1993 did not erect any new barrier. It is undisputed that the EBO Code of 1993 was not made effective and was not, and is not now, the law of Columbus. Until a new EBO Code is actually in effect in the City of Columbus, any injury which the plaintiffs may foresee as a result of such legislation is neither "concrete and particularized" nor "actual or imminent." *Id.* at 663, 113 S.Ct. 2297. Indeed, such injury cannot be other than hypothetical and conjectural until the law that might inflict the injury is in fact the law. We think it is clear that the plaintiffs here cannot demonstrate the "injury in fact" essential to establish standing to challenge the 1993 EBO Code.

## B. Mootness

While we are on the subject of *Associated General Contractors v. Jacksonville,* we should point out that, unlike that case, the one before us is moot. And this case is moot for the very reasons that *Jacksonville* was not. In *Jacksonville,* the ordinance at issue had been adjudged unconstitutional; the judgment was appealed; the appellate court, holding that the plaintiffs lacked standing, vacated the judgment; after the Supreme Court granted certiorari, the city repealed the ordinance and enacted a new but slightly different one. The Court held that the issue of mootness was directly controlled by *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), in which the Court held that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 289, 102 S.Ct. 1070. If the district court's judgment were vacated, the *Mesquite* Court said, there would be nothing to prevent the City from simply enacting the offending ordinance all over again, and therefore, the issue of the ordinance's constitutionality was not moot. *Id.* The *Jacksonville* Court pointed out that "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so." *Jacksonville,* 508 U.S. at 662, 113 S.Ct. 2297. Without any adjudication of the constitutionality of the old ordinance, the plaintiffs would be subject to the same injury but in a slightly modified form. The issue of the ordinance's constitutionality therefore was not moot.

In the case before us, however, the parties agreed to a judgment declaring the 1989 EBO Code unconstitutional. The City of Columbus could not reenact that set-aside ordinance, or enact one that was not "sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided." *Id.* at 662 n. 3, 113 S.Ct. 2297. The

issue of the constitutionality of the only set-aside ordinance actually enacted and made effective by the City was adjudicated and the judgment is final. The case is now moot.

## C. Advisory Opinions

 The Supreme Court has made it clear that requests for advisory opinions from federal courts are not justiciable. In *Barr v. Matteo*, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957), the Court stated:

[A]n advisory opinion cannot be extracted from a federal court by agreement of the parties, and no matter how much they may favor the settlement of an important question of constitutional law, broad considerations of appropriate exercise of judicial power prevent such determinations unless actually compelled by the litigation before the Court.... *Many of the same reasons are present which impel them to abstain from adjudicating constitutional claims against a statute before it effectively and presently impinges on such claims.*

*Id.* at 172, 78 S.Ct. 204 (emphasis added) (internal quotation marks omitted) (citing *Eccles v. Peoples Bank*, 333 U.S. 426, 432, 68 S.Ct. 641, 92 L.Ed. 784 (1948)).

In the case of *Fletcher v. Housing Authority*, 525 F.2d 532 (6th Cir.1975), this Court was asked to consider whether a rent-range formula enacted by the Housing Authority of Louisville violated the National Housing Act of 1937. During the pendency of the litigation, the National Housing Act was amended. We noted that the amended section was "not yet the law of the United States," *id.* at 534, and concluded, "[b]ecause the provisions of the 1974 Act are not before us, we will not render an advisory opinion on how it may affect our Judgment at some future time." *Id.*

In the case before us, the agreed order enjoined the City from enacting any further preference legislation, and retained jurisdiction so that "if or when the City of Columbus believes that it has a basis to impose minority or female percentage preferences in the award of prime contracts or subcontracts for construction then the City of Columbus will petition the Court to modify this Order." This language can be read only as a request by the parties for an advisory opinion as to the constitutionality of future legislative action. That this was the intent of the parties is further evidenced by the provision in the EBO Code of 1993 that the Code would become effective only upon "application to and approval by [the district court judge] pursuant to his January 25, 1991, Order...." The only possible interpretation of this provision is that the City expected the district court to provide an advisory opinion regarding the constitutionality of the ordinance prior to its becoming law. Such an opinion is beyond the power of a federal court to provide.

For all of these reasons, we conclude that after the entry of the agreed order in January 1991, there was no longer any case or controversy before the district court. The district court therefore lacked jurisdiction to rule on the constitutionality of the proposed EBO Code of 1993.

## IV. CONCLUSION

We are unhappily aware of the harshness of the result of our conclusion that the district court lacked jurisdiction to proceed beyond the determination that the 1989 EBO Code was unconstitutional and the enjoining of its further enforcement. The record in this case is voluminous and the district court's effort in reviewing that record and issuing its ruling was thorough and exhaustive. In the context of the functioning of district courts in general and of the proceedings in this case in particular, it is not difficult to understand why neither the parties nor the judge considered the issue of jurisdiction when the agreed order was entered. Their focus was on resolving this difficult and somewhat rancorous dispute, and this order embodied an efficient way, satisfactory to

the parties, of accomplishing a resolution. For all of the reasons stated herein, however, we must reluctantly hold that it exceeded the jurisdiction of the court.

Accordingly, the district court's order of August 1996 is VACATED. That portion of the January 25, 1991, agreed order enjoining the City from legislatively or administratively enacting any further preference law or policy without complying with the requirements of *Croson*, and retaining continuing jurisdiction over the activities of the City with regard to such preference law or policy is VACATED. This matter is REMANDED to the district court with instructions that it be DISMISSED.