Nicholas J. **LARIONOFF**, Jr., et al.,
Plaintiffs,
v.
**UNITED STATES** of America et al.,
Defendants.

Civ. A. No. 626–73.

United States District Court,
District of Columbia.

Sept. 28, 1973.

Stephen Daniel Keeffe, Washington, D. C., John A. Keeffe, New York City, of counsel, for plaintiffs.

Harold H. Titus, Jr., Arnold T. Aikens, Michael A. Katz, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

This case is before the Court on Cross Motions for Summary Judgment. The Plaintiffs are petty officers in the United States Navy wherein the Plaintiffs claim entitlement to a reenlistment bonus. They are classified as Communications Technicians-Maintenance (CTM), a service rating which at the time they enlisted was classified as a "critical military skill," and, thus eligible for a Variable Reenlistment Bonus (VRB) payable in two equal installments in each year of the first term reenlistment. The Bonus was four times the regular reenlistment bonus. On July 1, 1972, the Navy reclassified the CTM rating as non-critical and thus allegedly made the Plaintiffs no longer eligible for the VRB. This was prior to the time the Plaintiffs' reenlistment period began to run, but after the time they signed their reenlistment contracts. As indicated, the Navy now refuses to pay the Plaintiffs the VRB. This is a class action where the Plaintiffs are suing for themselves and all those similarly situated for payment of a VRB. They invoke the Court's jurisdiction under the Tucker Act, 28 U. S.C. § 1346(a), claiming that the language in their enlistment contracts entitles them to relief.

### II. BACKGROUND OF THE CASE

Each of the seven named Plaintiffs enlisted for four years in the Navy at seven different times and places.[1] All were assigned to the Advanced Electronic Field training program. Successful completion of this approximately year-long course earned the Plaintiffs rapid promotions and a rating as CTM's, a critical military skill. Assignment to the Advanced Electronic Field program, however, required the Plaintiffs to obligate themselves for six years of Naval service. Each Plaintiff, therefore, had to sign a two year extension contract on the day he originally enlisted or shortly thereafter.[2]

1. Boudreau enlisted on 1/13/69 at Boston, Mass.; Dietz on 9/3/69 at Fargo, N.D.; Johnson on 8/28/70 at Los Angeles, Calif.; Larinoff on 6/23/69 at Newark, N.J.; Smith on 10/1/68 at Detroit, Mich.; Tomiano on 3/28/69 at Pittsburg, Pa.; White on 3/13/69 at Denver, Colo.

2. Boudreau, Dietz, Johnson and Tomiano signed their extension contracts the same day on which they executed the original four-year commitment. Larinoff signed his contract on July 9, 1969; Smith on October 15, 1968 and White on July 23, 1969.

Between April 20, 1966 and July 1, 1972, "CTM" was classified as a "critical military skill." Pursuant to 37 U.S.C. § 308(g) the holder of a "critical military skill" classification who voluntarily extended his first term enlistment for two years was entitled to a reenlistment bonus not more than four times the amount of the regular reenlistment bonus computed under subsection (a) of § 308.[3] *See,* Department of the Navy Bureau of Naval Personnel Instruction (BUPERSINST) 1133.18B "Variable Reenlistment Bonus (VRB) Program," Dec. 19, 1968. In March of 1972, the Department of the Navy determined that CTM's category did not need special emphasis for recruitment, and removed the rating from the critical skills list, and, as a result, they argue that Plaintiffs are not eligible for the VRB.

The Plaintiffs maintain that the prospect of eligibility for a VRB as a CTM induced them to sign for the extra two years. Upon examination of the legislative history of the VRB, it appears that Congress intended that the VRB should assist in the attraction and retention of members of the armed forces with critical skills. The VRB was to do this by providing an especially strong reenlistment incentive to first term enlisted personnel in the critical skill areas. 1965 U.S.Code Cong. and Adm.News, at 2749, 2756-7.

Now that the CTM is not classified as a critical skill, the Navy refuses to pay the Plaintiffs their VRB when their reenlistment periods become effective. The government maintains that (1) the Plaintiffs do not state a claim upon which relief can be granted; and (2) that Court lacks subject matter jurisdiction; and (3) the Plaintiffs have not exhausted their administrative remedies; and (4) the Defendants are not obligated to pay an additional bonus under the terms of the enlistment contracts. The plaintiffs argue that the VRB, statutorily defined as "pay" and paid to all CTMs when the Plaintiffs signed their contracts, is payable to them under their contract terms. The parties agree there is not dispute as to a material issue of fact.

The Court is of the opinion that the Plaintiffs must prevail on all issues raised in this case, with the exception of the award of attorney's fees, for the reasons set out below.

III. THIS SUIT IS A PROPER CLASS ACTION UNDER RULE 23(b)(1)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

■ The proposed class in this suit is composed of all enlisted U.S. Naval Personnel who signed their first reenlistment contracts for two additional years of duty prior to July 1, 1972, and who would have been entitled to a VRB due to their critical skill rating had the period of reenlistment begun to run prior to July 1, 1972. The Plaintiffs estimate the class size to lie between 200 and 400. While they have not supplied any documentation to support this, the Defendants have neither denied this number nor have they supplied a class list.

This case clearly meets the requirements of Rule 23(b)(1)(B) to be certified as a class action. The members of the proposed class are so numerous and geographically dispersed that joinder of all members would be impractical. The sole issue on the merits before the Court requires an interpretation of the contract which the Department of the Navy uses to secure all its reenlistment obligations. This is a matter of law applicable to all parties who are bound by these uniform contracts. Therefore, an adjudication with respect to the individual members of the class would as a practical matter be dispositive of the interests of the other members of the class as defined above.

---

3. The bonus was to be paid in equal yearly installments in each year of the reenlistment. 37 U.S.C. § 308(g).

## IV. THE COURT HAS SUBJECT-MATTER JURISDICTION UNDER THE TUCKER ACT.

■ The Tucker Act gives District Courts original jurisdiction, concurrent with the Court of Claims over any claim against the United States not exceeding $10,000 in amount, founded upon any express or implied contract with the United States. 28 U.S.C. § 1346(a)(2). In 1964, Congress amended § 1346(d)(2), which prohibited district courts from exercising jurisdiction over claims or civil actions to recover fees, salary, or compensation for official services of officers or employees of the United States. This specific action by Congress indicates that district courts can now hear and determine the issues raised in the case at bar.

This suit is for a reenlistment bonus, which Plaintiffs maintain is included in the consideration delineated in their contracts. The pertinent terms of the contract relating to consideration state: ". . . in consideration of the pay, allowances, and benefits which will accrue to me during the continuance of my service, . . .".[4] The term the Plaintiffs emphasize is "pay." Section 308 of Title 37 of the United States Code terms the reenlistment bonus (including VRB's) as "special pay." The definitional section of Title 37 of the United States Code, Section 101(21) defines "pay" as including special pay. Therefore, the Court determines that the Plaintiffs have made a prima facie case that the suit before the Court is founded upon a contract for compensation between the United States and its employees.

## V. THE PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

■■ The Plaintiffs presented their claims to the Bureau of Naval Personnel and members of Congress. The Defendants maintain this was insufficient to exhaust the Plaintiffs' administrative remedies; the Plaintiffs should have applied to the Board for Correction of Naval Records (BCNR) for relief.

As the Defendants have stated, the purpose of the BCNR is to determine the existence of error or injustice in Naval records and to make recommendations for the correction of those records, if warranted, to the Secretary of the Navy. 10 U.S.C. § 1552. An examination of the language of the law and its legislative history indicates that the act is intended to provide correction of an individual's service record which has entries resulting from the actions of general courts martial and of statutory bodies, such as Boards of Review, and to provide reimbursement of any compensation which the individual had been denied due to an incorrect or unjust entry. 40 Ops. Att'y Gen. 504 (1947). As the Attorney General's opinion emphasizes, the purpose of the act was to relieve Congress of the private bills necessary to effect a correction of such entries. *Id.* at 508.

Back pay due because of an incorrect or unjust discharge or naval record entry is not the relief sought here. Plaintiffs here seek an enforcement of the provisions of their enlistment contracts which were binding upon the Plaintiffs and the government at the time of execution. The Plaintiffs' contracts provided that they could not be cancelled except as set forth in the *Bureau of*

---

4. The language of the Defendants' printed form "Agreement to Extend Enlistment" (NAVPERS FORM 601–1A) says in pertinent part: "I (name of enlistee, service number) having enlisted in the Navy of the United States on (date) for (no.) of years, *in consideration of the pay, allowances and benefits* which will accrue to me during the continuance of my service, voluntarily agree to extend my enlistment, as authorized by section 5539 of Title 10, United States Code, and the regulations issued pursuant thereto . . ." (emphasis added).

*Personnel Manual (BUPERSMAN), Article C–1407.* The Plaintiffs presented their complaints to the Bureau of Naval Personnel, the body which set the policy for cancellation of enlistment contracts. Through that body, the defendant has given its interpretation of the contract, and denied the cancellation request after reviewing the facts. The matter is appropriately before the Court, whether one views it as a review of an administration's determination of a question of law or in light of 28 U.S.C. § 1346 which gives this Court original jurisdiction over contract questions.

## VI. THE PLAINTIFFS ARE ENTITLED TO A VRB WHICH WAS PAYABLE WHEN THEY SIGNED THEIR CONTRACTS FOR THE TWO–YEAR EXTENSION

Turning to the contracts involved in this suit, the Defendants argue that the two contracts should be viewed as one—a six-year obligation in exchange for specialized training only. The Court does not see the contracts as one entity, however. They are two separate documents in form and substance. The first is for the regular four-year enlistment which any person desiring to enlist signs as a matter of course. This contract makes no promises. The second, the reenlistment contract, does make a promise—in exchange for two additional years' obligation, the Navy would provide special schooling leading to a critical military skill rating.

There is no argument that the Plaintiffs have received the benefits of training because they signed reenlistment contracts long before their original enlistment contracts expired. The question is, however, whether these reenlistment contracts also provide for a VRB, in addition to the training, in exchange for the six-year obligation.

As the Court stated, *supra,* in Section IV of this Opinion, the statutory definition of the term "pay" as it applies to the military does include the variable reenlistment bonus. See 37 U.S.C. § 101(21) and § 308. The VRB was intended to induce first term reenlistment among those with such classified skills to insure the Navy maintained an adequate number of personnel in these areas. At the time the Plaintiffs signed their reenlistment contracts, the Navy was paying the VRB for this purpose. The Navy was thus benefiting from a guaranteed supply of personnel in critical areas. The Plaintiffs committed themselves to a total of six years in one of these critical skills which was receiving the VRB. If the Plaintiffs were bound to the reenlistment contract from the moment of its execution, then mutuality of agreement requires that the Defendants be likewise bound.

The cardinal rule of contract law that comes into play when analyzing the language of a written instrument is that the document must be considered in light of the situation and relationship of the parties, the circumstances surrounding them *at the time of the contract,* and the nature of the subject-matter and the apparent purpose of the contract. E. g., Fox v. Johnson & Wimsatt, Inc., 75 U.S.App.D.C. 211, 127 F.2d 729 (1942); Aronsen v. K. Arakelian, Inc., 154 F.2d 231 (7th Cir. 1946).

Applying this rule to the facts of this case there can be no dispute that the Navy was using the VRB at the time the Plaintiffs signed their extension, to induce reenlistment in critical skill areas. The Plaintiffs committed themselves to six-year obligations in critical skill areas "in consideration for pay . . . ." that the Defendants were paying all other critical skill first term enlistees. The Defendants cannot suspend the VRB's in a retroactive fashion, not after the Defendants have obtained their full bargained-for exchange under the contract, i. e., an obligated work force. Their suspension of the VRB payment can apply only to those first term reenlistments which were signed after July 1, 1972.

If the Defendants did not want to be committed to the payment of a VRB, they should have made a self-evident

provision in the contract. The printed form contract, after all, was drafted solely by the Defendants; its language was entirely within their control.[5] In addition, it is elemental that a contract must be construed most strongly against the authors which in this case was the government. E. g., Alcoa S. S. Co. v. United States, 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225 (1950); John W. Johnson, Inc. v. Basic Construction Co., 139 U.S.App.D.C. 85, 429 F.2d 764 (1970).

Therefore, the Court holds that the Plaintiffs are entitled to recover the variable reenlistment bonus applicable to their critical skill rating which was in effect at the time they signed their reenlistment contract.

## VII. THE AWARD OF ATTORNEY'S FEES MUST BE DETERMINED BY KISER CLASS ACTION STANDARD

 Plaintiffs' counsel requests $175,000.00 as an appropriate award of attorney's fees. Counsel derived the figure of their proposed award both by a fee of $200 per hour or 25% of the estimated class recovery. Counsel have received a retainer of $2,700.00 from the representative Plaintiffs and have a contract for legal fees designating charges of $125 to $200 per hour for partners and counsel and $40 to $60 per hour for law clerks.

Counsel have submitted time records and a disbursement sheet. Counsel's affidavit filed August 29, 1973 indicates 378½ hours of partner time and 221 hours of clerk time has been expended on this case. This sum is the total for both the New York and Washington offices.

Since this case was filed on March 30, 1973, Plaintiffs' counsel have appeared in court twice: the first appearance was on a motion for a temporary restraining order, to prevent the transfer of the Plaintiffs from their duty stations in the Washington area pending a determination of the case, and second, on a hearing on the cross motions for summary judgment. At the second court appearance, counsel was granted leave to file an amended complaint to prevent the case from being dismissed on a technicality—a lack of subject matter jurisdiction. Upon filing their amended complaint, counsel submitted a memorandum on the question of attorney's fees as the Court had requested.

As this is a class action, the Court finds the appropriate standard for the determination of attorney's fees is the standard and policy considerations set out by this Court in the case of Kiser v. Miller, et al., 364 F.Supp. 1311, (1973). Applying that standard to the facts of this case, the Court has determined that an award of $14,729.00 is appropriate in this case.

In making this determination, the Court finds that $40 an hour is an appropriate reflection of the effort and skill expended in this case as well as the result achieved. The Court also finds that an hourly rate of $6.00 per hour is an appropriate fee for law clerks, considering the prevailing wage for their services.

Upon examination of the time records, the Court noted that a majority of the New York counsel's time was spent solely in telephone conferences with Washington counsel and that consisted of over 60 hours of the partner's recorded 82 hours. It also appears that there was a great amount of duplication of law clerk research effort between the two offices. Therefore, the Court has reduced the number of hours expended by the New York partner to 22 hours and has re-

5. A self-evident provision that the Defendants included in the original enlistment contract was a certification that no promise was made as to duty assignment, geographical area, schooling, special programs, assignment of government quarters or transportation of dependents. This provision appears to be superceded by the reenlistment contract's promise of special training (schooling, special programs) in the Advanced Electronic Field training program.

duced the amount of clerk time recorded in each office by one-half, producing a total of 110 hours of clerk time. The total number of partners' time used to compute the fee was 318¼ hours. The total hourly fee then is $13,390.00—$12,730.00 for partner's time and $660.00 for clerk's time. In addition, the Court has added a 10% premium as an incentive fee, bringing the total award to $14,729.00. This award does not include the $2,700.00 retainer fee which will be dealt with *infra*.

The payment of attorney's fees will be made from the class recovery. Each class member's individual recovery will be taxed for his pro-rata share of the attorney's fee. In addition, counsel must refund the $2,700.00 in retainer fees to the representative plaintiffs, since counsel has received a Court award of attorneys' fees.

Section 2412 of Title 28 of the United States Code does not permit the Court to enter a judgment for costs against the United States government unless it is expressly authorized to do so by statute. Section 2412 expressly excludes the taxing of attorney's fees and expenses. *See* 6 Moore, Federal Practice, ¶ 54.75 [3.-2] at 1558 (1972). H.R.Rep.No.1535, 1966 U.S.Code Cong. and Admin.News 2527, 2531. Therefore, although equity would require taxing of attorney's fees to the defendants in this case, the statute precludes this Court from so doing.

As to the matter of costs and expenses, the Court finds $7,137.75 to be grossly excessive and not normally taxed, and, accordingly, disallows the same. Stenographic services and xeroxing are matters counsel should provide as of course in connection with the rendition of legal services. The Court notes that there was no discovery of depositions taken in this case, and that kind of expense which would be allowable is not pertinent here. Although the Court is not in a position to dictate to counsel how to run their offices with the greatest economy and efficiency, the Court will not permit these costs to be taxed to the class. The costs listed in the disbursement record are to be absorbed by counsel.