James A. CARINI et al., Appellees,

v.

UNITED STATES of America et al., Appellants.

James A. CARINI et al., Appellants,

v.

UNITED STATES of America et al., Appellees.

Nos. 75–1399, 75–1400.

United States Court of Appeals, Fourth Circuit.

Argued June 12, 1975.

Decided Dec. 19, 1975.

---

James E. Bradberry, D. Wayne Moore, Newport News, Va. (Moore, Weaver, Moore & Bradberry, Newport News, Va., and George H. Mahler, Virginia Beach, Va., on brief), for appellees in No. 75–1399 and appellants in 75–1400.

Neil H. Koslowe, Atty., U. S. Dept. of Justice (Rex E. Lee, Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., William B. Cummings, U. S. Atty., and Robert E. Kopp, Atty., U. S. Dept. of Justice on brief), for appellants in No. 75–1399 and for appellees in No. 75–1400.

Before HAYNSWORTH, Chief Judge, WINTER and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

The question is the entitlement of Naval personnel to reenlistment bonuses for which there was statutory and regulatory authorization at the time they signed enlistment extension agreements, but for which they could not qualify without a further extension of their periods of service under a new statute enacted by the Congress during the term of their initial enlistment and before the

extended term was reached. The district court held that the statutes in effect at the time the extension agreements were executed became a part of the contract, that the motivation for the amendment was fiscal and that it was beyond the power of the Congress to alter the agreements.

We come to a different conclusion.

Each of the plaintiffs enlisted in the Navy for a period of service of four years. At the time of enlistment, or not long thereafter, each of the plaintiffs also signed an enlistment extension agreement to serve for an additional period of two years. They did this to qualify for participation in a program of training and work in electronics or some phase of nuclear operation. The programs required extensive and costly training, because of which the Navy wished to assure itself that participants in the program would serve longer than the regular four year enlistment period.

The enlistment extension agreements recited that the sailor agreed to the extension of the period of his service "in consideration of the pay, allowances, and benefits which will accrue to me during the continuances of my service."

A part of the inducement for the extension agreements was an expectation by each that after completion of service of the initial period of four years, he would receive a "Variable Reenlistment Bonus" in addition to the regular reenlistment bonus. In 1965, the Congress had made provision for the payment of such Variable Reenlistment Bonuses to military personnel "having critical military skills,"[1] and personnel who had satisfactorily completed these programs of training were classified as possessing such skills under authorized regulations adopted by the Secretary of Defense. The amount of the bonus was calculated under a formula, so that the exact amount was not predictable at the time the reenlistment extension agreements

were signed, but it is conceded that under § 308(g), each of the plaintiffs would have been entitled, at the time the reenlistment period began, to a sum ranging between $4,000 and $6,000.

In 1974, however, when each of these plaintiffs was still serving the initial four year enlistment obligation, the Congress changed the statute.[2] The revised statute contains no authorization to the Secretary of Defense to adopt regulations providing for such special bonuses. The Congress made its own statutory provision for a "Selective Reenlistment Bonus," but conditioned its payment upon the existence of a reenlistment agreement for a period of at least three years, rather than two.

The 1974 statute expressly preserves, for military personnel on active duty at the time, the right to receive the regular reenlistment bonus upon reenlistment,[3] but the only provision for a special or extra bonus was the new SRB, for which these plaintiffs do not qualify.

■ The failure to preserve the VRB for military personnel in the position of these plaintiffs was not inadvertent. The Navy specifically called the situation to the attention of Congress. The Conference Committee considered the matter, and disposed of it by saying that the SRB could be paid to such personnel if the enlistee would cancel his prior enlistment extension agreement and enter into a new extension agreement calling for a period of reenlisted service of at least two years beyond the period provided in the cancelled extension agreement. The congressional intention is thus plain. Despite the reasonable expectations of these plaintiffs, the statute in effect at the time that the reenlistment period began to run, or will begin to run, does not authorize the payment of any VRB; it does authorize the payment of an SRB, under the congressional formula but only if, during the initial

1. 37 U.S.C.A. § 308(g).

2. 37 U.S.C.A. § 308(a)(4).

3. The Act of May 10, 1974, Pub.L. # 93–277 § 3, 88 Stat. 119. The regular enlistment bonus was withdrawn for personnel who enter on active duty after January 1, 1974, the effective date of the Act.

enlistment period, the old reenlistment extension agreements are cancelled and new ones executed calling for a longer period of extended service.

■ While the district court reasoned that the 1965 statute became a part of the reenlistment agreement, we think it did not. Those agreements were said to be in consideration of the "pay, benefits and allowances which will accrue." There is no reference to a VRB. Indeed, there is no specification at all of what pay will accrue. On its face, it seems to us to mean that the enlistee will receive the pay authorized by statute and regulation from time to time as he performs his service. Indeed, the plaintiffs concede that the monthly salary they receive was not fixed at the rates in effect at the time of the contracts. It is subject to the unfettered control of the Congress. The Supreme Court has said that "a soldier's entitlement to pay is dependent upon statutory right." *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365.

■ Reenlistment bonuses are a form of pay for military personnel. With respect to congressional control of the entire matter, we see no basis for distinction between a reenlistment bonus and regular rates of pay. In 37 U.S.C.A. § 101(21), "pay" is defined to include "basic pay, special pay, retainer pay, incentive pay, retired pay, and equivalent pay, but does not include allowances." It covers these reenlistment bonuses. A sailor has a statutory right to receive his regular pay,[4] and he may earn "special pay" by performing certain duties or acts, including reenlistment,[5] or "incentive pay" for the performance of hazardous duty.[6] The special pay in the form

of reenlistment bonuses cannot be said to be less subject to congressional control than the other forms of regular, special and incentive pay which are subject to congressional control.

Such cases as *Morse v. Boswell*, D.C. Md., 289 F.Supp. 812, aff'd per curiam, 4th Cir., 401 F.2d 544, do not persuade us to the contrary. In that case the district court said that the statutes in effect at the time of enlistment were incorporated in the contract, but the relevant statute contemplated the existence of other statutes, including subsequently enacted statutes, so there was no conflict between the statutes in effect at the time of the contract and those in effect at the time the reservist was called to active duty. That is not the situation here, where the Congress deliberately changed the basis for qualification for special reenlistment bonuses.[7]

Since the parties agree that all military pay is not fixed at the time of the enlistment or reenlistment contract, we think this contract consideration clause anticipated possible statutory change.

While we hold there is no enforceable contract right to the payment of the VRBs under the now repealed § 308(g), the situation of these plaintiffs is most appealing. When they executed their reenlistment agreements, they had been told of the provisions of § 308(g) and the regulations which seemingly would entitle them to the payment of the VRB. They had a reasonable expectation that they would get it, or something reasonably approximating it. While in a legal sense they must be held to an awareness that Congress might change the statutes, they could not be charged with anticipation that the Congress would so change

4. 37 U.S.C.A. § 204.

5. 37 U.S.C.A. §§ 302–311.

6. 37 U.S.C.A. § 301.

7. In *Larionoff v. United States*, D.D.C., 365 F.Supp. 140, 145, Navy petty officers had signed enlistment extension agreements at a time when the applicable regulations classified them as possessing critical skills and thus entitled to a special reenlistment bonus. The

court held that they could not be deprived of the right to receive that bonus by an amendment of the regulations to provide that their skills were not critical. Here, of course, we deal with congressional power. While a court might reasonably hold the Navy bound by its representation, it cannot bind congressional power in areas committed to congressional discretion.

the statute as to make them unqualified for any special bonus without an extension of their reenlistment agreements for an additional two year period, for a total of eight years service rather than of six. Their expectation of the receipt of a special enlistment bonus was a part of the inducement for their signing the reenlistment agreements, and now their expectations are frustrated. Under the circumstances, the Congress may wish to reconsider their situation and the moral claims they have against the United States.

*Reversed.*