**Earl B. COLLINS et al., Plaintiffs-Appellees and Cross-Appellants,**

**v.**

**Donald H. RUMSFELD et al., Defendants-Appellants and Cross-Appellees and other consolidated cases.**

Nos. 75–2935, 75–2967, 75–3238, 75–3432, 75–3348 and 75–3559.

United States Court of Appeals, Ninth Circuit.

Sept. 27, 1976.

---

**1110**

Eric A. Seitz (argued), Honolulu, Hawaii, for appellants in No. 75–2935 and appellees in No. 75–2967.

Robert E. Kopp, Atty. and Neil H. Koslowe, Atty. (argued), of U.S. Dept. of Justice, Washington, D. C., for appellants in Nos. 75–2967, 75–3238, 75–3432, 75–3559.

Scott J. Tepper (argued), of Garfield & Tepper, Los Angeles, Cal., for appellants in Nos. 75–2935, 75–3348 and appellees in Nos. 75–3432, 75–2967, 75–3238, 75–3559.

Neil H. Koslowe, Atty. (argued), of U.S. Dept. of Justice, Washington, D. C., for appellees in Nos. 75–2935, 75–3348.

Before CHAMBERS and SNEED, Circuit Judges, and SWEIGERT,[*] District Judge.

SNEED, Circuit Judge:

These are cases in which the not unreasonable expectations of the plaintiffs must be disappointed in order to serve the common good as perceived by Congress. This provides little comfort to the plaintiffs who are enlisted naval personnel, but our recognition of this perception of Congress extinguishes any power on our part to intervene.

In brief, the cases amount to this. The plaintiffs, while on active duty in the Navy, entered into agreements to extend their enlistments for an additional two or three years, which additional terms were to commence on various dates, all subsequent to June 1, 1974, the effective date of the Armed Forces Enlisted Personnel Bonus Revision Act of 1974.[1] At the time these agreements to extend enlistments were executed the law and applicable regulations authorized the payment of certain bonuses designated as Variable Reenlistment Bonuses (VRB's). Each plaintiff was induced to agree to extend his enlistment by the prospect of receiving in due course a VRB. Prior to the commencement of a period of extended enlistment with respect to any plaintiff, the applicable law was changed by the Bonus Revision Act of 1974. Each of the plaintiffs, either before or after the effective date of the 1974 Act, completed

---

[*] The Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Pub.L. No. 93–277, 88 Stat. 119 (*codified in part at* 37 U.S.C. §§ 308, 308a (Supp. IV, 1974)).

the training which was necessary to qualify for a VRB. The 1974 Act abolished the VRB's and substituted therefor Selective Reenlistment Bonuses (SRB's) for which each plaintiff might qualify but for which he was not then, nor has he become, qualified. The plaintiffs contend that notwithstanding the 1974 Act they are entitled to VRB's upon qualification therefor and commencement of their reenlistment periods. We hold to the contrary and reverse the holdings of the trial courts.

## I.

■ To justify our holding we turn to the agreements to extend enlistments executed by the plaintiffs. Each agreed to extend his enlistment "in consideration of the pay, allowances, and benefits which will *accrue* to me during the continuances of my service." (*Italics* added). No one contends that entitlement to a VRB *accrued* at the time the reenlistment agreement was executed. This is acknowledged even though each trial court found that the plaintiffs were induced to extend their enlistments because of the prospect of VRB's. Moreover, this acknowledgment is considered compatible with the fact that the Navy during the time VRB's were available used the program to induce the reenlistment of personnel having "critical skills" and instructed its personnel concerned with obtaining extensions of enlistments to stress the advantages of early reenlistments.

This recognition that an entitlement to a VRB did not *accrue* on execution of the reenlistment agreement is consistent with the applicable legislative history of the 1974 Act. In the deliberations leading to that Act the Navy expressed "great concern" that the bill "might be interpreted to require it to abrogate an understanding it had with enlistees." Conf.Rep. No. 93–985, 93d Cong., 2d Sess. 4 (1974) U.S.Code Cong. & Admin.News 1974, p. 2998. The Conference Report contains this response to the Navy's concern:

> The Navy expressed great concern that the language of the bill might be interpreted to require it to abrogate an under-

standing it had with enlistees and would operate in such a way as to cause serious retention problems in its most critical career field. The conferees, therefore, want it understood that while it normally does not expect bonuses to be paid for services for which there was an existing obligation, it is consistent with the conferees' understanding that full entitlement to SRB will be authorized for personnel who have already agreed to an extension period prior to the enactment of the legislation if they subsequently cancel this extension prior to its becoming operative and reenlist for a period of at least two years beyond the period of the cancelled extension. Nothing in the bill should operate to deny the Chief of Naval Operations the authority to extend SRB entitlement to nuclear-power operators, if they subsequently can cancel any outstanding extension period prior to its becoming operative and reenlist for a period of at least two years beyond the period of the cancelled extension.

The above "understanding" of the conferees is completely at odds with the notion that the enlistees about whom the Navy was concerned already has accrued rights to VRB's. Such enlistees, among whom are the plaintiffs, were extended an opportunity to qualify for SRB's, but not VRB's.

Had Congress intended to maintain that opportunity VRB's would have been treated similar to Regular Reenlistment Bonuses (RRB's) which were preserved for every enlisted member on active duty on the effective date of the 1974 Act. This preservation was provided to prevent those entitled from "losing their $2,000 reenlistment entitlement which by law they expected to receive." H.Rep. No. 93–857, 93d Cong., 2d Sess. 6 (1974), U.S.Code Cong. & Admin. News 1974, p. 2984. No comparable provision applicable to VRB's was enacted.

## II.

■ Having held that entitlement to a VRB did not accrue on the date an agreement to extend an enlistment was executed, we confront the issue whether Congress

immediately thereafter had the power to alter, or abolish entirely, the VRB. We believe it did because bonuses are a form of pay entitlement to which, in the words of *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961), "is dependent upon statutory right" and not "common law rules governing private contracts." When the statute upon which the right to an unaccrued bonus rests is altered, any right to such bonus is also altered. We construe *Carini v. United States,* 528 F.2d 738 (4th Cir. 1975) to so hold and we agree.

The appeal of the plaintiffs' cases lies in the fact that Congress deferred abolishing the VRB's for a significant period of time following the execution of the reenlistment agreements. Expectations aged and, to the reenlistees, became no less than practical certainties. Nonetheless, entitlement thereto remained a "statutory right" subject to Congress' power to alter or abolish.

■ It may well be that, upon accrual of the right to a VRB, the power of Congress to alter or abolish is more limited. *See Lynch v. United States,* 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).[2] Such an issue, however, is not before us because we are convinced, and so hold, that at no time prior to commencement of the reenlistment period did a right to VRB's accrue.[3]

The reenlistment agreements clearly contemplated the possibility of pay, allowances and benefits being altered during either the enlistment or reenlistment periods. The

words "which will accrue to me during the continuances of my service" focus on the future and are inconsistent, at least in flavor, with the view that the agreements incorporated and made a part thereof the entire statutory and regulatory provisions pertaining to VRB's as they existed on the date such agreements were executed. It is unlikely the plaintiffs would differ with this had Congress increased the value of VRB's to which they might become entitled rather than abolishing them.

We express no opinion on the manner in which a VRB should be computed had the plaintiffs entered upon their reenlistment period prior to June 1, 1974, the effective date of the 1974 Act. This issue confronted the court in *Larionoff v. United States,* 175 U.S.App.D.C. 32, 533 F.2d 1167 (1976). We recognize, of course, that the court in *Larionoff* also held that a reenlistee who entered upon his reenlistment period subsequent to the effective date of the 1974 Act was entitled to a VRB. As already indicated we disagree with that holding and, in so doing, align ourselves with *Carini v. United States, supra.*

REVERSED.

SWEIGERT, District Judge (concurring):

I concur with Judge Sneed's result mainly upon the ground set forth in Part II of his opinion.

In *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961), the Su-

---

**2.** Impairment of existing contract rights, it has been said, requires the exercise of a paramount governmental power such as the War Power. *See Larionoff v. United States,* 175 U.S.App. D.C. 32, 533 F.2d 1167 (1976); *Federal Housing Administration v. Darlington,* 358 U.S. 84, 97– 98, 79 S.Ct. 141, 3 L.Ed.2d 132 (Harlan dissenting) (1958).

**3.** It is not necessary for the disposition of this case to determine the precise point in time at which a right to a VRB might have accrued. There is, however, considerable support in 37 U.S.C. § 308(e), as it existed prior to the 1974 Act, as well as the 1974 Act and its legislative history, for the view that the right to a VRB accrued only as it is earned during the reenlistment period. *See* 37 U.S.C. § 308a(b); H.Rep. No. 93–857, 93d Cong., 2d Sess. 7 (1974). The

statutory provisions make clear that the reenlistee who voluntarily or because of misconduct did not complete his reenlistment period was obligated to return "that percentage of the bonus that the unexpired part of his enlistment is of the total enlistment period for which the bonus was paid." Accrual for the purposes of determining entitlement may proceed differently, however.

Of possible assistance in determining the *point in time at which accrual occurs* are the cases applying 10 U.S.C. § 857(a) in which is drawn a distinction between accrued and unaccrued pay and allowances for purposes of forfeitures imposed as a result of a court-martial. Forfeiture of accrued pay and allowances is not permitted. *See Dickenson v. United States,* 163 Ct.Cl. 512 (1963).

preme Court pointed out that "[C]ommon-law rules governing private contracts have no place in the area of military pay . . [a] soldier's entitlement to pay is dependent upon statutory right." (Id. at 401, 81 S.Ct. at 1235). Quoting from *In re Grimley,* 137 U.S. 147, 151, 11 S.Ct. 54, 34 L.Ed. 636 (1890), the Supreme Court in *Bell* explained that this is so because, although enlistment is a contract, "[I]t is one of those contracts which changes the status; and, where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes" (366 U.S. at 402, 81 S.Ct. at 1235)—a drastic rule but one that may be justified by national defense considerations affecting the unique relationship between soldiers and their government.

In *Carini v. United States,* 528 F.2d 738 (4th Cir. 1975), the Fourth Circuit pointed out that even the plaintiffs before it conceded that the monthly salary they received was not fixed at the rates in effect at the time of the enlistment contracts and concluded from the above-quoted language of *Bell* that an enlistee's monthly salary is "subject to the unfettered control of the Congress". (Id. at 401, 81 S.Ct. 1230).

In *Larionoff v. United States,* 533 F.2d 1167 (4th Cir. February 17, 1976), petition for rehearing denied, 533 F.2d 1188 (April 21, and 29, 1976), the D.C. Circuit, referring to the government's contention that enlistment documents must be construed to incorporate, not only the statutes in force at the time the agreement is signed, but future changes in those statutes as well, stated that "[T]he Government's point on this issue is certainly accurate as to regular pay for enlistees . . ." (Id. at 1190), indicating, as I read their opinion, a concession that regular pay of enlistees could be changed (up or down or, for that matter, abolished) by Congress during the enlistment term without releasing the soldier from his obligation to complete the terms.

If it be the law that even a soldier's basic pay is subject to change or even elimination without changing his status as a soldier, then I have no difficulty in agreeing with the Fourth Circuit in *Carini* that special incentive pay in the form of a variable reenlistment bonus, which falls well within the definition of pay as broadly defined in 37 U.S.C. 101(21), is no less subject to the same drastic Congressional control during the term of enlistment than is regular pay.

If we misconstrue *Bell,* it will be for the Supreme Court to make the correction.

The only Supreme Court case cited to the contrary of *Bell* and *Carini,* is *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 641, 78 L.Ed. 1474 (1934). The difficulty with the citation of *Lynch* is that *Lynch* involved, not army enlistments, but war risk insurance policies under a 1917 Act which had been repealed by the Congress in 1933. The Supreme Court specifically distinguished such insurance policies from pensions and compensation allowances which are gratuities creating no vested right. (292 U.S. at 597, 54 S.Ct. 641.)

If the basic law governing army enlistment pay is as stated in *Bell* and *Carini,* it follows that statutory reduction or abrogation of the variable reenlistment bonus here involved was something that reenlistment soldiers must be held to have anticipated during their enlistment period—however mistaken and disappointed their expectations.

In this view of the applicable law, the actual language of the reenlistment contract is not determinative of the issue presented. However, even that language (as Judge Sneed points out) does not militate against the conclusions I reach mainly upon another ground.