Raleigh H. ALLEN, III, et al., Appellees,

v.

**UNITED STATES of America et al., Appellants.**

James A. CARINI et al., Appellees,

v.

**UNITED STATES of America et al., Appellants.**

Nos. 78–1513 to 78–1516.

United States Court of Appeals,
Fourth Circuit.

Argued April 5, 1979.

Decided Sept. 19, 1979.

Linda M. Cole, Dept. of Justice, Civ. Div., App. Staff, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., Robert E. Kopp, Dept. of Justice, Civ. Div., App. Staff, Washington, D. C., on brief), for appellants.

James E. Bradberry and D. Wayne Moore, Moore, Weaver, Moore & Bradberry, Newport News, Va. (George H. Mahler, Virginia Beach, Va., on brief), for appellees.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

BUTZNER, Circuit Judge:

In these consolidated appeals, the United States challenges the legality of fees allowed attorneys in two related cases. We conclude that the district court had jurisdiction to award reasonable fees. Because the record does not sustain the awards, we vacate them and remand for further proceedings.

I

The appeals arise from two suits brought by servicemen who were denied the Variable Reenlistment Bonus provided by Pub. L.No. 89–132, § 3, 79 Stat. 547 (1965) (formerly 37 U.S.C. § 308(g)). The first case, *Carini v. United States,* began in 1974 when the lawyers to whom fees now have been awarded brought suit for individual plaintiffs in the Eastern District of Virginia. The district court entered judgment for the plaintiffs, but we reversed. *Carini v. United States,* 528 F.2d 738 (4th Cir. 1975). Counsel for the servicemen then filed a petition for a writ of certiorari. Shortly after our decision, *Larinoff v. United States,* 175 U.S.App.D.C. 32, 533 F.2d 1167

(D.C. Cir. 1976), affirmed a judgment for a class of servicemen who raised similar claims. The Supreme Court upheld that decision in *United States v. Larinoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). The Court granted certiorari, vacated our judgment, and directed us to reconsider *Carini. See* 432 U.S. 902, 97 S.Ct. 2944, 53 L.Ed.2d 1074 (1977). We then reinstated the judgment for the plaintiffs and remanded the case for determination of the bonus due each plaintiff.

After the Supreme Court announced its decision in *Larinoff,* counsel for the *Carini* plaintiffs filed a second suit in the Eastern District of Virginia. That suit, *Allen v. United States,* involved individual plaintiffs with claims identical to those presented in *Carini.* The government conceded liability, and the district court conducted joint proceedings in *Allen* and *Carini* to assess and disburse the bonuses, which aggregated approximately $1,700,000.

During the proceedings on remand, plaintiffs' counsel informed the district judge that they had an oral contingent fee contract with their clients. The lawyers said that they had agreed to seek the guidance of the court in setting a fee not to exceed 25% of each bonus recovered. They suggested that the judgments should direct the government to disburse to them 20% of each plaintiff's recovery as an attorney's fee. The district judge accepted the proposal, but the government attorney primarily responsible for the litigation—who was not present at the informal discussions—objected and requested a hearing. After the hearing, the judge reaffirmed his decision. He adverted to the novelty of the cases and the risk of non-recovery, but he made no findings on the existence of attorney-client relationships, validity of the fee contract, or the other factors usually determinative of reasonable compensation for legal services.

The district court's judgments ordered the United States immediately to pay the plaintiffs' bonuses and to remit 20% of each bonus directly to the plaintiffs' lawyers. Sketches for two of the several orders were endorsed "seen and agreed" by an assistant United States attorney who was not responsible for the cases. The government challenged the endorsements in the district court, and nothing in the record suggests that the attorney had authority to bind the servicemen with respect to the payment of fees. Thus, the endorsements are not dispositive of the issues, although they undoubtedly led the district court initially to believe that the government was satisfied with the fees.

## II

■ The plaintiffs' lawyers contend that the government has no standing to contest fee awards based on private contracts between litigants and their lawyers. They argue that the order directing disbursement of fees merely establishes a procedure through which each plaintiff pays his own fee from his own recovery.

The district court properly ruled that the government has standing even though the fees are not assessed against the United States. This ruling is supported by sound precedent. In *Freeman v. Ryan,* 133 U.S. App.D.C. 1, 408 F.2d 1204 (D.C. Cir. 1968), for example, the court found the Secretary of Agriculture had standing to contest a fee award payable from an escrow fund that he held for the plaintiffs' benefit. Although *Ryan* involved a claim for fees in a class action, the government's interest in the propriety of fees which it is obliged to disburse is no less in a case where numerous individual claimants act in concert without class certification. In either instance, the government has an interest in seeing that funds it owes to litigants are disbursed properly.

## III

The government contends that the fee awards are totally invalid. It argues that, absent a common fund created by the litigation or a statute authorizing the taxation of fees against the United States, the district court had no jurisdiction to award fees. The government thinks we should vacate the awards and require payment of the full bonuses to the servicemen without

deduction for fees. This would remit counsel for the plaintiffs to enforcement of their fee contracts in state courts. Federal diversity jurisdiction would be unavailable because the amount in controversy between counsel and each plaintiff is insufficient.

Counsel for the plaintiffs, in response, emphasize that the district court merely enforced their contract with their clients. That, counsel argue, was a proper exercise of the court's jurisdiction. They assert, however, that the court has no power to abrogate the private fee arrangement.

■ We reject the government's argument. The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established. *Dunn v. H. K. Porter Co.,* 602 F.2d 1105, 1108 (3d Cir. 1979), succinctly restates the general principles pertaining to this authority:

> Because contingency fee agreements are of special concern to the courts and are not to be enforced on the same basis as are ordinary commercial contracts, *Spilker v. Hankin,* 88 U.S.App.D.C. 206, 210, 188 F.2d 35, 39 (D.C. Cir. 1951), courts have the power to monitor such contracts either through rule-making or on an *ad hoc* basis. Canon 13 of the Canons of Professional Ethics, promulgated by the American Bar Association, recognizes that an attorney is free to enter into such arrangements. The Canon, however, qualifies the right with the proviso that they are subject to the "supervision of the courts, as to [their] reasonableness." *See Fitzgerald v. Freeman,* 409 F.2d 427 (7th Cir.), *cert. denied,* 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134 (1969) (court not bound by contingent fee agreement executed in conjunction with substitution of new counsel and could, in light of Canons 13 and 34, award fees on quantum meruit basis). We indicated the source of the power in *Schlesinger v. Teitelbaum,* 475 F.2d 137, 141 (3d Cir.), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973), where we stated that "in its supervisory power over the members of its bar, a court has jurisdiction of

certain activities of [its] members, including the charges of contingent fees."

Power flowing from this source has been exercised more frequently to protect those unable to bargain equally with their attorneys and who, as a result, are especially vulnerable to overreaching. *Schlesinger v. Teitelbaum, supra,* 475 F.2d at 140 (seaman); *Cappel v. Adams,* 434 F.2d 1278 (5th Cir. 1970) (children). However, it has also been exercised whenever a contingent fee agreement yields an unreasonable fee. *In Re Michaelson,* 511 F.2d 882, 888 (9th Cir.), *cert. denied* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975) (court has inherent power to examine amount charged by attorney in order to protect client from excessive fees); *Farmington Dowell Products Co. v. Forster Manufacturing Co.,* 421 F.2d 61, 87 (1st Cir. 1969) (court has power to examine contingent fee contract in order to assure that it is not unwittingly an accessory to excessive fee). *See also, Pitchford v. Pepi, Inc.,* 531 F.2d 92, 110–11 (3d Cir. 1975), *cert. denied* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976).

*See also In re Crouse,* 273 F.Supp. 642, 645 (S.D.W.Va.1965), *aff'd,* 383 F.2d 405 (4th Cir. 1967); *Garrett v. McRee,* 201 F.2d 250, 253 (10th Cir. 1953). *See generally* F. MacKinnon, Contingent Fees for Legal Services 23–24, 44–45 (1964); ABA, Code of Professional Responsibility EC 2–19 and 20, DR 2–106.

■ We also reject the argument advanced by counsel for the plaintiffs that a court can do no more than enforce the terms of the contingent fee contract. Associated with a court's power to allocate part of the recovery to counsel is its obligation to limit the fee to a reasonable amount. A court abuses its discretion if it allows a fee without carefully considering the factors relevant to fair compensation. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978); *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 96–97, 503 F.2d 177, 187–88 (D.C. Cir. 1974). These factors, set forth in DR 2–106(B) of the ABA Code of Profes-

sional Responsibility, apply even where the fee request is based on a private fee agreement. *See Kiser v. Huge,* 170 U.S.App.D.C. 407, 424–25, 517 F.2d 1237, 1254–55 (1974), *adopted en banc,* 171 U.S.App.D.C. 1, 17, 517 F.2d 1275, 1291 (D.C. Cir. 1975); *Cappel v. Adams,* 434 F.2d 1278, 1279–80 (5th Cir. 1970). Indeed, the fee agreements on which counsel relied in these cases required them to seek the court's guidance. Thus, the agreements themselves contemplated that the court would exercise its supervisory power to award no more than reasonable compensation.

■ The record now before us contains no findings of fact from which we can determine whether the district court based its fee awards on a careful consideration of the relevant facts. The court also failed to verify the existence of an attorney-client relationship between counsel and each plaintiff. We therefore vacate the fee awards and remand this matter for proper findings and the entry of new awards.

## IV

■ On remand, notice of the proceedings must be given to each serviceman, and he should be afforded an opportunity to present his views pro se, possibly through the assistance of government counsel, or through private counsel of his own choosing. The district court then should determine whether an attorney-client relationship exists between counsel and each of the servicemen. If counsel can show that a plaintiff authorized them to represent him in this litigation, they are entitled to reasonable compensation out of his recovery. A client who authorizes litigation on his behalf must expect to pay a reasonable fee for the services performed by his lawyers.

The court must fix reasonable fee awards in accordance with the standard set out in

the ABA Code of Professional Responsibility, DR 2–106(B), and elucidated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).* In reaching its determination, the court must consider each relevant factor and make findings of fact detailed enough to support its conclusions. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978).

■ The fees allowed in *Allen* should be lower than those awarded in *Carini.* Although counsel did some preliminary work for the *Allen* plaintiffs, the case was filed after the Supreme Court had decided *Larinoff.* Thus when the suit was filed, the plaintiffs virtually were guaranteed full recovery. Indeed, the government conceded its liability to these plaintiffs. Even though they agreed to represent the *Allen* plaintiffs on a contingent fee basis, counsel took no risk of non-recovery except to the extent of their preliminary work while *Larinoff* was pending. Counsel's work in *Allen* was essentially a matter of monitoring claims, a task which appears to have required relatively slight professional skill.

## V

The government has moved to have the proceedings on remand assigned to a different district judge. We believe that the motion should be denied. The judge who heard a case generally is best able to assess reasonable compensation giving due regard to the rights of both clients and attorneys. The record does not support a conclusion that the judge will fail to discharge this duty impartially.

The attorneys' fee awards are vacated, and the case is remanded for further proceedings consistent with this opinion.

* *Johnson* directs the court's attention to (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.