UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and AtLee
Argued at Leesburg, Virginia


JOSEPH A. CERRONI

                                           MEMORANDUM OPINION[*] BY
v.       Record No. 0389-22-4                  JUDGE GLEN A. HUFF
                                           JANUARY 10, 2023

JACQUELINE NADINE DOUGLAS, GUARDIAN
 OF THE ESTATE OF S.D., AN
 UNEMANCIPATED MINOR


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Joseph A. Cerroni, *pro se*.

Lisa M. Campo (Kimberley Ann Murphy; Hale Ball Carlson
Baumgartner Murphy, PLC, on brief), for appellee.


Joseph A. Cerroni ("appellant") appeals an order from the Fairfax County Circuit Court

(the "circuit court") authorizing payment of attorney fees in an amount contrary to the

contingency fee agreement between appellant and his client, Ms. Jacqueline Douglas

("appellee").[1]  As explained below, this Court finds the circuit court lacked subject matter

jurisdiction over appellant's fee application.  Therefore, this Court reverses the circuit court's

order and dismisses the case.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The circuit court case arose out of appellant's filing of an attorney fee application. Appellant still represented Ms. Douglas at that time, although the attorney-client relationship has since been terminated.  The circuit court's order authorizing payment of attorney fees, from which appellant appeals, was recorded under the following case name and number: "In re: Guardianship of [S.D.], an unemancipated minor"; FI-2021-0001688.

## I. BACKGROUND

In February 2019, Tamiru Woldesemaet Adisu ("Mr. Adisu") died intestate and his daughter, Lydia T. Adisu ("Ms. Adisu"), qualified as the administrator of his estate in the probate division of the circuit court. Appellee subsequently sought to have her minor daughter, S.D., declared an heir of Mr. Adisu's estate. Originally, appellee was represented by Clifford M. Cohen ("Mr. Cohen"), an attorney licensed in Washington, D.C.

Mr. Cohen "determined that [appellee] had a viable case and that there was sufficient equity in the real estate [of Mr. Adisu] to make the case worth pursuing." After first attempting to resolve the matter "without engaging outside counsel and without going to court," Mr. Cohen contacted appellant—an attorney licensed in Virginia—about joining the case. Both appellant and Mr. Cohen discussed with appellee the different options for proceeding with the case. They agreed that the total legal fee would not exceed the $3,000 retainer fee appellee had already paid to Mr. Cohen so long as appellant could resolve the matter "quickly without objection from Ms. Adisu."

In response, Ms. Adisu "decided to dispute [S.D.]'s right as heir to [Mr. Adisu's] estate" and hired her own counsel. As a result, Mr. Cohen advised appellee that, because "a court hearing would be required and admissible DNA evidence would be necessary," any future legal work would require appellee to pay the attorneys on an hourly basis. Appellee told Mr. Cohen that "she did not have the money to pay an hourly fee and was considering dropping the matter." Appellant then suggested a compromise: a contingency fee agreement in which the fee "would be based on the value of any property recovered" on behalf of S.D.

Appellee asked appellant whether he would accept a 33.3% contingency fee instead of 40%, but appellant advised her that he could not accept less than 40% "because of the difficulty of the case." Appellee agreed to the 40% fee and signed a representation agreement—containing

the contingency fee arrangement—with appellant and Mr. Cohen in June 2020. The terms of the contingency fee arrangement provided that appellant and Mr. Cohen would receive "40% of the value of any portion of the Estate of [Mr. Adisu] . . . recovered for the benefit of [S.D.]."

The representation agreement also included an explanatory note as to the "significant legal work" expected by appellant and Mr. Cohen, including "a hearing to declare [S.D.] an heir of the Estate" followed by liquidation of the estate. The agreement further stated:

> [t]he liquidation process may require substantial time because the assets of the Estate are real property. During the liquidation process disputes may arise between the parties and additional hearings and legal work may be required. The parties acknowledge that a contingency fee of 40% is fair and reasonable in these circumstances.

As a result of appellant's and Mr. Cohen's efforts, the circuit court issued an order on May 20, 2021, in which it declared S.D. as Mr. Adisu's daughter and his "heir at law" to his estate. Accordingly, S.D. was awarded $254,209.67 in proceeds from Mr. Adisu's life insurance policy and appellant "took action to have [appellee] declared as Guardian" of S.D.'s property. Those funds are currently held in Mr. Cohen's escrow account.

On November 12, 2021, appellant filed an attorney fee application (the "fee application") in the circuit court "seeking court approval for Guardian to pay a contingency fee to Counsel based on the life insurance proceeds recovered."[2] Appellee did not object to the fee application. At a hearing on this matter before the circuit court, appellant stated that his purpose in filing the application was "to have this issue of reasonableness of the attorney fee decided in advance. . . . We thought it was better to do this in advance . . . to make it easier for our client so [she] wouldn't have problems down the road."

---

[2] Although the heading of the fee application states that it was filed by both appellant and Mr. Cohen, as joint counsel for appellee, only appellant signed the application and Mr. Cohen never appeared in the circuit court on this matter.

On January 19, 2022, the commissioner of accounts for the circuit court, Anne M. Heishman ("Ms. Heishman"), filed a preliminary response to appellant's fee application, in which she requested the court refer the matter to her office for a hearing. The circuit court granted that request on January 21, 2022, and referred the case to Ms. Heishman "for hearing and report." Ms. Heishman conducted a hearing on January 25, 2022, and subsequently filed a report of her findings and recommendations, which the circuit court adopted when it issued an order "authorizing payment of attorneys' fees from minor's estate" on February 11, 2022 ("February 2022 order").[3]

In the February 2022 order, based on the recommendations in Ms. Heishman's report, the circuit court reduced the 40% contingency fee to only "25% of the life insurance proceeds currently held in the escrow account of Mr. Cohen." This alteration of the parties' contract was based solely on the Commissioner's opinion—after she weighed the twelve factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for determining the reasonableness of attorney fees in federal court—that a 40% fee was unreasonable, in part because "a customary fee in a case involving representation of a minor is 25% to 33.3%."

The circuit court then directed appellant and Mr. Cohen to "immediately disburse the remaining life insurance proceeds, in an amount estimated to be $186,678.67," to appellee. Finally, the circuit court ordered that the reduced 25% contingency fee would "cover[] the remaining work" that appellant and Mr. Cohen "are to complete for [appellee] as stated in the parties' Representation Agreement, including that the Estate of [S.D.] receives its share of the real property owned by decedent [Mr. Adisu] at his death."

---

[3] The record on appeal does not contain a transcript of the hearing conducted by Ms. Heishman on January 25, 2022, but it does include a copy of her subsequent report filed with the circuit court on February 7, 2022.

Appellant appended several written objections to the February 2022 order and filed a motion for reconsideration or clarification on February 17, 2022. The circuit court denied appellant's motion by written order on March 2, 2022. Appellant then filed a notice of appeal on March 7, 2022. On March 19, 2022, appellant filed a motion to withdraw as appellee's counsel because appellee "voiced her dissatisfaction with the representation and wishes to engage other counsel." The circuit court granted that motion on April 29, 2022.

This appeal followed.

## II. ANALYSIS

Appellant brings five assignments of error on appeal, challenging the circuit court's handling of his fee application and the terms contained in the court's February 2022 order. Specifically, appellant takes issue with the circuit court's reduction of the contingent fee amount from 40% to 25%, as well as the court's instruction that appellant complete the remaining work for appellee as stated in the representation agreement for no additional fee award. He also asserts the circuit court erred in ordering him to immediately disburse the remaining 75% of the life insurance proceeds to appellee because he had no control over those funds being held in Mr. Cohen's escrow account.

This Court, however, reaches none of those claims because the circuit court's order was void *ab initio*. Because the circuit court lacked jurisdiction over appellant's fee application, the February 2022 order is a nullity and neither party is bound to its terms.[4] Accordingly, this Court reverses and dismisses the case.

---

[4] Nor may appellant undertake any further work on appellee's case since they dissolved the attorney-client relationship.

Standard of Review

Whether a circuit court has jurisdiction over a particular matter is a question of law that this Court reviews *de novo* review on appeal. *See Reaves v. Tucker*, 67 Va. App. 719, 727 (2017). "Jurisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (quoting *Shelton v. Sydnor*, 126 Va. 625, 629 (1920)). "In order for a court to have the authority to adjudicate a particular case upon the merits," it must possess subject matter jurisdiction. *Id.* (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427-28 (1923)).

"Subject matter jurisdiction is the authority vested in a court by constitution or statue to adjudicate certain categories of *disputes*." *Smith v. Commonwealth*, 281 Va. 464, 467 (2011) (emphasis added) (citation omitted). The Supreme Court of Virginia has repeatedly recognized that subject matter jurisdiction "can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it." *Pure Presbyterian*, 296 Va. at 49 (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772 (1947)).

"Once a court determines that it lacks subject matter jurisdiction, 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Id.* at 50 (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall) 506, 514 (1868).[5] Any other "judgment on the merits made without subject matter jurisdiction is null and void." *Id.* (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)); *see also Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019) ("In the eyes of the law, such an order is not merely an erroneous order—it is no order at all."). Consequently, an order rendered void *ab initio* "can be [challenged] at any time in the

---

[5] This Court continues to acknowledge that a court "always has jurisdiction to determine whether it has subject matter jurisdiction." *Pure Presbyterian*, 296 Va. at 50 (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)).

proceedings, even for the first time on appeal by the court *sua sponte*." *Porter v. Commonwealth*, 276 Va. 203, 228 (2008) (quoting *Morrison*, 239 Va. at 170); s*ee also Pure Presbyterian*, 296 Va. at 50 ("[T]he want of such jurisdiction of the trial court will be noticed by this court *ex mero motu* [on its own motion]." (second alteration in original) (quoting *Humphreys*, 186 Va. at 772-73)); *Smith*, 281 Va. at 467 ("Without this type of jurisdiction a court's action is a nullity and is subject to challenge at any time.").

<u>The Circuit Court Lacked Jurisdiction Over Appellant's Fee Application</u>

At the outset, this Court finds there is no constitutional or statutory provision that grants the circuit court jurisdiction over appellant's unusual case.

To begin, appellant filed his fee application based on the erroneous belief that the circuit court was required to: (1) pre-authorize payment of attorney fees if they are to be distributed from a minor's estate, and (2) conduct a reasonableness analysis of the attorney fees before authorizing their payment. Appellant points to *In re: Abrams v. Abrams*, 605 F.3d 238, 243 (4th Cir. 2010) (quoting *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988)), in support of the proposition that the circuit court was authorized, and indeed required, to conduct an independent investigation "as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest.".

In *Abrams*, the Fourth Circuit held that a *federal* "district court does possess discretion in approving fee awards, particularly when its power to protect minors or the disabled is involved," but that the district court abuses its discretion in doing so when it "improperly appl[ies] the standards we have established for determining whether an attorney's fee is reasonable." *Id.* at 240. As to the question of reasonableness, *Abrams* directed district courts to "look at the twelve factors first set forth in *Johnson*, 488 F.2d 714," which the Fourth Circuit adopted in *Barber v.*

*Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), and *Allen v. United States*, 606 F.2d 432 (4th Cir. 1979).  605 F.3d at 244.

As both parties ultimately acknowledged at oral argument, the holdings in *Abrams* and *Johnson* are not binding upon Virginia courts.  And neither the legislature nor the courts in Virginia have chosen to adopt those federal provisions.  Indeed, Virginia courts continue to rely on "the multi-factor test . . . articulated in a number of cases," which includes a non-exhaustive list of seven different factors, rather than the twelve factors required by *Johnson*.  *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 333 (2020).  But here, the circuit court lacked jurisdiction to even reach a reasonableness inquiry.

Although *Abrams* expresses a noble sentiment—that a federal district court's judicial role of protecting those before it includes "ascertaining whether attorney fee agreements involving minors or incompetents are reasonable"— the Fourth Circuit's holdings do not confer the same jurisdiction to Virginia state courts.  605 F.3d at 243.  Nor do any of the statutory provisions in Title 64.2—governing a guardian's reporting requirements for disbursement of funds from a minor's estate—permit appellant to bring an undisputed fee application directly before the circuit court.  *See e.g., Phillips v. Rohrbaugh*, 300 Va. 289, 305-08 (2021); *Wood v. Martin*, 299 Va. 238, 251 n.8 (2020).  Although this Court has found no decision of a Virginia court addressing the particular circumstances presented here, other Virginia cases involving attorney fees are informative for how to deal with appellant's unique situation.  This Court concludes, therefore, that the jurisdiction of Virginia's circuit courts to review attorney fees requires the existence of a dispute, such that the courts can provide a remedy.

Here, no dispute over the legal fees sought accompanied appellant's fee application.  Rather, appellant filed the application on behalf of appellee, whom he was still representing at the time, because he believed *Abrams* required the circuit court to authorize appellee's payment

of the legal fees from the funds in S.D.'s estate. As noted above, that belief was incorrect.[6]

Moreover, appellee did not object to the fee application nor did she contest in court the enforceability of the contingency fee agreement or the reasonableness of the agreed-upon 40%. Indeed, it was only after the circuit court entered the February 2022 order *and* appellant filed his notice of appeal in this Court that appellee took an adverse position to appellant and terminated her attorney-client relationship with him.

At oral argument, appellant admitted that he filed the fee application as a precautionary measure to protect appellee from any possible future disputes with the commissioner of accounts regarding the proper use of S.D.'s funds. *See* Code §§ 64.2-1200 to -1222, -1300, -1913 (governing the duties of guardians, such as periodic reporting to the commissioner of accounts of all distributions made from a minor's estate). The circuit court, however, has no jurisdiction over such speculative matters where no current dispute exists and the anticipated future dispute may never arise. In fact, Title 64 bars this type of broad review by a circuit court and instead requires a guardian to report all completed disbursements from a minor's account directly to the commissioner of accounts.

Consequently, the circuit court lacked subject matter jurisdiction over appellant's fee application where there was no current dispute and thus no basis for awarding attorney fees, let alone rewriting the terms of the existing representation agreement. This limitation is evidenced by the Supreme Court's discussion in *Lambert v. Sea Oats Condominium Association, Inc.*, 293

---

[6] This Court also notes that appellant, Mr. Cohen, and appellee entered into the contingency fee agreement as part of a broader representation agreement amongst themselves. At that time, appellee had not been appointed guardian of S.D. for any legal representation matters. Although appellee was presumably acting on behalf of S.D., the contract is only binding on the actual parties to the agreement: appellant, Mr. Cohen, and appellee. Thus, appellant may seek to enforce the terms of the agreement only against appellee (or Mr. Cohen).

Va. 245, 255 n.3 (2017), of the different types of attorney fees cases handled in Virginia state courts:

> While *Seyfarth, Shaw* [*v. Lake Fairfax Seven Ltd. Partnership*, 253 Va. 93, 94-95 (1997),] was a case where a law firm sought to recover its fees from a client that refused to pay its bill, not a case about awarding attorney's fees to a prevailing party, the question in both types of cases is whether the amount sought is reasonable. *Compare* [*id.*] at 96 (holding that "[a]n attorney who seeks to recover legal fees from a present or former client must establish . . . that the fees charges to the client are reasonable") *with RF&P Corp. v. Little*, 247 Va. 309, 322 (1994) (noting that "in all cases where attorney's fees are recoverable pursuant to statute," the fees sought must be reasonable) *and Mullins v. Richlands Nat'l Bank*, 241 Va. 447 (1991) (holding that where a contract "provided for attorney's fees, but did not fix the amount," the fees sought must also be reasonable).

The common element among these cases is the existence of an active dispute, whether between an attorney and a client refusing to pay his bill or between the prevailing and losing parties in a post-litigation fee-shifting situation. Appellant's case, however, does not fit into those categories. Nor does it raise any other type of dispute over the legal fees. Thus, the circuit court had no authority to consider appellant's untimely fee application.

### III. CONCLUSION

In the absence of any constitutional or statutory authority to the contrary, the circuit court lacked subject matter jurisdiction to consider appellant's fee application under the specific circumstances presented here. Therefore, the February 2022 order is void *ab initio*. Accordingly, this Court reverses and dismisses the case.

*Reversed and dismissed.*